[Crim. No. 3670. First Dist., Div. Two. Jan. 25, 1960.]

THE PEOPLE, Respondent, v. HOLLIS WHITE, Appellant.

Arthur D. Klang, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Clarence A. Linn, Assistant Attorney General, and Peter T. Kennedy, Deputy Attorney General, for Respondent.

DOOLING, Acting P. J.—February 8, 1950, the appellant was adjudged a psychopathic delinquent pursuant to Welfare and Institutions Code, section 7058, and committed to Mendocino State Hospital. In 1955, he was transferred to Atascadero State Hospital and on July 30, 1957, to the medical facility at Vacaville. On December 20, 1957, he was transferred to San Quentin prison. While incarcerated there, appellant was convicted of violation of section 4502 of the Penal Code, which provides:

"Every prisoner committed to a State prison who, while at such State prison or any other State prison or while being conveyed to or from any State prison or while at any prison road camp, prison forestry camp, or other prison camps or prison farms or while being conveyed to or from any such place or while under the custody of prison officials, officers or employees, possesses or carries upon his person or has under his custody or control any instrument or weapon of the kind commonly known as a black-jack, slung shot, billy, sandclub, sandbag, or metal knuckles or any explosive substance or any dirk or dagger or sharp instrument, or any pistol, revolver or other firearm, is guilty of a felony and shall be punishable by imprisonment in a State prison for a term not less than five (5) years. (Added Stats. 1943, ch. 173, p. 1068, § 2.)"

▇▇▇ Appellant does not deny that on January 12, 1958, he had in his possession a homemade sharp knife and a file. His sole ground of appeal is that he was not a prisoner within the meaning of section 4502 but, rather, a patient.

It cannot be successfully argued that appellant was not lawfully committed to San Quentin Prison and there held in custody by due process of law. He was adjudged a psychopathic delinquent pursuant to Welfare and Institutions Code, section 7058, which provides for a 90-day period of commitment for observation. The record reflects that the medical superintendent of Mendocino State Hospital, the place of observation, reported appellant to be a psychopathic delinquent. Upon receiving the report the court proceeded with a further hearing as provided in section 7058. Criminal proceedings were suspended and appellant was committed for an indeterminate period as a psychopathic delinquent. Section 7051 of the Welfare and Institutions Code provides that the director of institutions, with the approval of the Department of Finance, may provide one or more institutional units to be used for the custodial care and treatment of defective or psychopathic delinquents. The institutions to which defendant was transferred from time to time were legally designated institutions for the care and treatment of psychopathic delinquents.

We do not agree with appellant's contention that, having been legally committed as a patient, he was not a prisoner within the meaning of Penal Code, section 4502. A patient may also be a prisoner. The word "prisoner" is defined in Webster's New International Dictionary as "a person under

arrest, in custody or in prison; one involuntarily restrained; a captive; as a prisoner of justice, of war or at the bar." Oxford Universal Dictionary defines "prisoner" as: "One who is kept in prison or in custody; specifically, one who is in custody as the result of a legal process." Ballantine Law Dictionary defines a prisoner as: "A person deprived of his liberty by virtue of a judicial or other lawful process." Thus, the significance of the word "prisoner" is not the manner of commitment, but rather the fact of a judicial commitment. If a defendant is in custody at a state prison as the result of due legal process, he is a prisoner within the meaning of Penal Code, section 4502.

*People* v. *Scherbing*, 93 Cal.App.2d 736 [209 P.2d 796], is analogous to the case before us. In that case, the appellant had been convicted of a violation of Penal Code, section 4502, but contended that since he had been unlawfully committed to San Quentin, he was not subject to the provisions of Penal Code, section 4502. The court said at pages 742-743:

". . . The statute was passed to protect the guards and other inmates of the prison. It is a reasonable regulation. The fact that the particular inmate may be unlawfully confined certainly does not confer upon him the right to possess weapons denied to other inmates. If the purpose of the statute is to be achieved, and obviously the purpose is a sound one, it makes no difference why the prisoner has been confined, or that he may be legally entitled to release. While an inmate, necessity requires that the prisoner submit to prison regulations, and certainly section 4502 is a reasonable regulation."

We believe the rationale of Scherbing is applicable to this case, and that any person lawfully committed to San Quentin Prison, who is in custody and subject to restraint by reason of legal process, may be prosecuted for violation of Penal Code, section 4502. This, whether he be a patient, a psychopathic delinquent, or a prisoner convicted of a felony.†

 We have concluded that the fact that appellant was under commitment as a psychopathic delinquent did not require the trial judge on his own initiative to investigate his sanity under Penal Code, section 1367, a conclusion with which counsel for appellant agrees. Section 7050, Welfare and Institutions Code, expressly excludes from the definition of a psychopathic delinquent one who is "a proper subject

---

†The opinion up to this point was written by Mr. Justice Stone, pro tem.*

*Assigned by Chairman of Judicial Council.

for commitment . . . to a State hospital as an insane person,'' and in *People* v. *Jensen*, 43 Cal.2d 572, 578-579 [275 P.2d 25], the court expressly held that no inference of insanity arises from the mere fact of commitment as a psychopathic delinquent under that section.

Judgment affirmed.

Draper, J., concurred.

STONE, J. pro tem.*—I concur in the majority's holding that a person legally confined in a state prison is a prisoner within the meaning of Penal Code, section 4502.

I cannot agree with the holding of the majority that the trial court was under no duty to inquire into the mental condition of the defendant pursuant to Penal Code, section 1367. To so hold gives rise to a judicial anomaly, since the record reflects that at the time of the commission of the present offense, the defendant had not been discharged as a psychopathic delinquent nor returned to the committing court. As a matter of law, it must be presumed that defendant's disability existed during the 11 years he was incarcerated, during which time, he committed the crime now in question. Since he was admittedly a psychopathic delinquent against whom criminal proceedings were then suspended, it is manifestly inconsistent to hold that he was properly convicted of a crime perpetrated during such commitment without the court first satisfying itself of his mental status. The majority cite *People* v. *Jensen*, 43 Cal.2d 572 [275 P.2d 25] as authority for their position. A reading of the opinion discloses the following at page 575:

''. . . By order of the court, Jensen was examined by three psychiatrists, each of whom concluded that Jensen was sane at that time and also when the offenses were committed. . . .''

Although the court in the Jensen case appointed the psychiatrists because the defendant pleaded not guilty by reason of insanity, the court, faced with the record in this case, should have appointed psychiatrists on its own motion to determine the mental condition of the defendant at the time the offense was committed and at the time of examination before proceeding to convict and sentence him for the commission of a felony.

Appellant's petition for a hearing by the Supreme Court was denied March 23, 1960.

---

*Assigned by Chairman of Judicial Council.