[Crim. No. 7501. First Dist., Div. One. Nov. 13, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
RAYMOND VEGA LOPEZ, Defendant and Appellant.

**COUNSEL**

Gary M. Merritt, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Michael J. Phelan and Charles R. B. Kirk, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SIMS, J.**—Defendant on December 8, 1967, was confined at California State Prison at San Quentin as a sexual psychopath[1] under a commitment

---

[1]At the time of defendant's commitment, March 12, 1963, the provisions of chapter 4 (commencing with § 5500), part 1, division 6 of the Welfare and Institutions Code, provided for the commitment of sexual psychopaths. (Stats. 1939, ch. 447, § 1, pp. 1783 et seq. as amended through the 1961 Regular Session of the Legislature.) In 1963 the heading of chapter 4, and the provisions therein which referred to "sexual psychopaths" were amended to read "mentally disordered sex offenders." (Stats. 1963, ch. 1913, § 1 et seq., pp. 3906 et seq.) In 1965 the provisions commencing with section 5500 were recodified as article 1 of chapter 1 of part 1.5 of division 6 of the Welfare and Institutions Code. (Stats. 1965, ch. 391, § 5, pp. 1643 et seq.) The provisions are now found in article 1 (commencing with § 6300) of chapter 2 of part 2 of division 6 of the same code. (Stats. 1967, ch. 1667, § 37, pp. 4116 et seq., operative July 1, 1969.)

issued by the Superior Court in Riverside County on March 12, 1963, pursuant to the then extant provisions of the Welfare and Institutions Code. He appeals from a judgment of conviction which on August 13, 1968, sentenced him to state prison following a jury verdict which found him guilty of possession of a sharp instrument on December 8, 1967, while confined in a state prison, a violation of the provisions of section 4502 of the Penal Code.[2] The facts, including his possession of a brass rod sharpened to a point, are undisputed. His sole contention on appeal, which he presented by motion to dismiss pursuant to section 995 of the Penal Code and urged throughout the proceedings, is that because of his status he was exempted from the provisions of section 4502 of the Penal Code by virtue of the provisions of section 6700.5 of the Welfare and Institutions Code.[3] This contention is rejected and the judgment is affirmed.

The facts as disclosed by a copy of the commitment and a copy of the report of the acting superintendent and medical director of Atascadero State Hospital, upon which the commitment was predicated, which were both filed with the trial court by the prosecution in opposition to defendant's motion to dismiss, and as revealed by the probation report filed in these proceedings are as follows: On October 7, 1962, the defendant was arrested and charged with indecent exposure (Pen. Code, § 314, subd.

---

[2]At the time of the alleged offense and at the time of defendant's conviction, section 4502 of the Penal Code read in pertinent part as follows: "*Every person confined in a state prison* . . . who . . . possesses or carries upon his person or has under his custody or control . . . any dirk or dagger or sharp instrument . . . is guilty of a felony and shall be punishable by imprisonment in a state prison for a term not less than three years." (Italics added.) At the time of defendant's commitment in 1963 the emphasized portion read, "Every prisoner committed to a State prison. . . ." (Stats. 1943, ch. 173, § 2, p. 1068.) In 1963 the phraseology was changed to the present text. (Stats. 1963, ch. 2027, § 3, p. 4168.)

[3]At the time of the alleged offense and at the time of defendant's conviction section 6700.5 of the Welfare and Institutions Code read in pertinent part as follows: "Whenever, in the opinion of the Director of Mental Hygiene and with the approval of the Director of Corrections, any person who has been committed to a state hospital pursuant to provisions of the Penal Code *or who has been committed for an indeterminate period pursuant to the provisions of Article 1 (commencing with Section 5500) of Chapter 1, Part 1.5, Division 6, of this code* needs care and treatment under conditions of custodial security which can be better provided within the Department of Corrections, such person may be transferred for such purposes from an institution under the jurisdiction of the Department of Mental Hygiene to an institution under the jurisdiction of the Department of Corrections.

"Persons so transferred shall not be subject to the provisions of Sections 4500, 4501, 4501.5, 4502, 4530, or 4531 of the Penal Code. . . ."(Italics added.) At the time of defendant's commitment in 1963 the section did not contain the emphasized language or any reference to sexual psychopaths. (Stats. 1961, ch. 1, § 1, p. 523.) In 1963 appropriate language was inserted to refer to persons committed as mentally disordered sex offenders (see fn. 1, *supra*; Stats. 1963, ch. 1913, § 21, p. 3915), and in 1965 the section was given the text set forth above. (Stats. 1965, ch. 1797, § 38, p. 4157.) Operative July 1, 1969 similar provision became recodified in section 7301. (Stats. 1967, ch. 1667, § 40, p. 4164.)

(1)) and battery (*id.* § 242). On November 16, 1962, he was committed to the Atascadero State Hospital for a 90-day observation period pursuant to the provisions of section 5512 of the Welfare and Institutions Code. (Stats. 1961, ch. 1093, § 1, p. 2822; and cf. present § 6316.) It may be inferred that defendant was convicted of the misdemeanors with which he was charged, that the criminal proceedings were suspended and that defendant was certified to the superior court to determine whether he was a sexual psychopath (former § 5501; Stats. Ex.Sess. 1952, ch. 24, § 2, p. 382; and cf. present § 6302); and that proceedings were regularly taken leading to an order for observation and diagnosis under section 5512. (See former §§ 5503, 5503.5, 5504, 5505 and 5511; and cf. present §§ 6305, 6306, 6307, 6308 and 6314.)

Pursuant to the provisions of section 5512 the superintendent on January 29, 1963, forwarded to the Riverside County Superior Court his "report, diagnosis and recommendation concerning [the defendant's] future care, supervision and treatment." In response to the questions propounded by the statute, the report states: "In my opinion he is a sexual psychopath, but will not benefit by care or treatment in a state hospital and is a menace to the health and safety of others." In elaborating upon this opinion the superintendent recommended as follows: "This patient is a sexual psychopath, but is not amenable to treatment in a hospital setting, and society still needs to be protected from him. He should be sentenced for the criminal act if sentencing is mandatory.

"If sentencing is not mandatory, I recommend that he be committed to the Department of Mental Hygiene for an indeterminate period, and because he is only eighteen years of age, he should be sent to the Reception and Guidance Center, Deuel Vocational Institution, Tracy, California, in compliance with Section 5512 of the Welfare and Institutions Code (disposition of case other than hospitalization when patient is not amenable to hospital treatment); and Section 5518 of the Welfare and Institutions Code (facilities for treatment) which states that the Director of the Department of Mental Hygiene and Department of Corrections shall provide units for custodial care and treatment of sexual psychopaths."

The next event appearing of record is the commitment dated March 12, 1963. It reads, as quoted in the margin.[4] If this commitment were in fact

---

[4]"[Title of Court and Cause] INDETERMINATE COMMITMENT OF SEXUAL PSYCHOPATH

"RAYMOND VEGA LOPEZ having been temporarily committed heretofore to Atascadero State Hospital for a period not to exceed ninety (90) days for observation and diagnosis as a sexual psychopath, and the Superintendent of said hospital having on the 29th day of January, 1963 forwarded to this Court his verified report, diagnosis and recommendations concerning the care, supervision and treatment of said RAYMOND VEGA LOPEZ, and a further hearing having been held this date.

"The Court finds that RAYMOND VEGA LOPEZ is a sexual psychopath within the

"under the provisions of Section 5518" it would indicate that the defendant had previously been committed for an indeterminate period to the Department of Mental Hygiene for placement in a state hospital as a sexual psychopath; and that the superintendent had certified that he had not recovered from his sexual psychopathy, and in the opinion of the superintendent was still a menace to the health and safety of others. (See former § 5517; Stats. 1957, ch. 460, § 1, p. 1501; and cf. present § 6325.) Section 5518 (Stats. 1951, ch. 448, § 2, p. 1461; and cf. present § 6326) purports to deal only with persons so certified. Because the commitment refers to the report of the original diagnosis and recommendation submitted pursuant to the provisions of section 5512, and contains no reference to any subsequent report, it must be deemed to be a commitment pursuant to the terms of section 5512.[5] The reference to section 5518 in the commitment undoubtedly stemmed from the superintendent's reference to that section as set forth in the extract from his report which is quoted above.[6] (Cf. *People v. Levy* (1957) 151 Cal.App.2d 460, 461-463 [311 P.2d 897], recommitment under § 5518.)

Under the provisions of section 5512, upon the receipt of a report of the tenor of that returned in the case of this defendant, it was the duty of the court in the civil proceedings to return him "to the court in which the criminal charge was tried to await further action with reference to such

meaning of Chapter 4 of Part 1 of Division 6 of the Welfare and Institutions Code, as amended, and that he will benefit by treatment in a state hospital.

"It Is THEREFORE ORDERED that RAYMOND VEGA LOPEZ be, and he is hereby committed as a sexual psychopath to the custody of the California Institution for Men at Chino, California for indeterminate period, under the provisions of Section *5518* of the Welfare and Institutions Code.

"It Is FURTHER ORDERED that the Sheriff of Riverside County take and deliver to said RAYMOND VEGA LOPEZ forthwith into the custody of the California Institution for Men at Chino, California for further disposition.

"Dated: March 12, 1963." (The reference to section "*5518*" is inserted over the cancellation of what appears to be "5512.")

[5]A contrary finding would detract from the prosecution's contention that the provisions of section 6700.5 [now 7301] of the Welfare and Institutions Code can only apply to persons who are transferred from an institution under the jurisdiction of the Department of Mental Hygiene to, as distinguished from being originally committed to, an institution under the jurisdiction of the Department of Corrections.

[6]Section 5518 (Stats. 1951, ch. 448, § 2, p. 1461, see present § 6326) then provided in part as follows: "The Director of Mental Hygiene, with the approval of the Director of Corrections and the Director of Finance, may provide on the grounds of a state institution or institutions under the jurisdiction of the Department of Corrections or the Department of Mental Hygiene one or more institutional units to be used for the custodial care and treatment of sexual psychopaths. Each such unit shall be administered in the manner provided by law for the government of the institution in which such unit is established." As is noted below this provision was referred to in section 5512 (see present § 6316).

criminal charge."[7] The record does not indicate whether that procedure was followed, or whether the court in the criminal proceedings elected to recertify the defendant to the superior court rather than to resume the criminal proceedings. (See fn. 7, above.) In any event, it is clear that the facts would have warranted such action, and that the superior court in committing the defendant to an institution, California Institution for Men at Chino, ·under the jurisdiction of the Department of Corrections was exercising jurisdiction and powers conferred by the statute. (See fn. 7 above, but cf. *In re Brown* (1969) 275 Cal.App.2d 537, 539-542 [79 Cal. Rptr. 897]; *People* v. *Washington* (1969) 269 Cal.App.2d 246, 251 [74 Cal.Rptr. 823]; and *People* v. *Armstrong* (1968) 260 Cal.App.2d 190, 192-195 [67 Cal.Rptr. 73].)

The People contend that the immunity conferred by section 6700.5 of the Welfare and Institutions Code does not apply to defendant because the legislative history of the section and the language of the statute itself demonstrate that it was only intended to apply to persons who were originally committed to an institution under the jurisdiction of the Department of Mental Hygiene, and who were subsequently transferred to an institution under the jurisdiction of the Department of Corrections. (See fn. 5, above.)

Section 6700.5, in the form originally adopted (see fn. 3, above), only concerns itself with "any person who had been committed to a state hospital pursuant to the provisions of the Penal Code." (Stats. 1961, ch. 1, p. 523.) The title of the enacting measure referred to "the transfer of state hospital patients"; and the urgency clause which was adopted to insure its immediate effectiveness recites: "The Penal Code provides for commitment to state hospitals of certain persons who have been charged with criminal offenses. Some of these individuals now confined are extremely dangerous

---

[7]The pertinent provisions of section 5512 (see present § 6316) were: "If the superintendent of the hospital or person in charge of the county facility reports to the committing court that the person is a sexual psychopath but will not benefit by care or treatment in a state hospital and is a menace to the health and safety of others, the court shall then cause the person to be returned to the court in which the criminal charge was tried to await further action with reference to such criminal charge. Such court shall resume the proceedings and shall impose sentence or make such other suitable disposition of the case as the court deems necessary. If, however, such court is satisfied that the person is a sexual psychopath but would not benefit by care or treatment in a state hospital and is a menace to the health and safety of others, it may recertify the person to the superior court of the county. If the superior court, after hearing, finds that the person is a sexual psychopath but would not benefit by care or treatment in a state hospital and is a menace to the health and safety of others, it may make an order committing the person for an indefinite period to the Department of Mental Hygiene for placement in a state institution or institutional unit for the care and treatment of sexual psychopaths designated by the court and provided pursuant to Section 5518. . . ."

and require confinement in secure facilities for their own protection and for the protection of the public. The state hospitals are not provided with adequate security features for such individuals and it is necessary that they be confined in facilities of the Department of Corrections. In order to permit such confinement at the earliest possible time, it is necessary that this act take effect immediately." (*Id.*) The Legislative Council's Digest appended to the bill which was subsequently enacted states, "Authorizes transfer of state hospital patient who has been committed to such hospital in criminal proceedings to an institution under the jurisdiction of the Department of Corrections. . . ." (S.B. 9, 1961 Reg.Sess., Jan. 3, 1961.)

In *In re Cathey* (1961) 55 Cal.2d 679 [12 Cal.Rptr. 762, 361 P.2d 426], the court reviewed the validity of the place and conditions of detention of the petitioner who had been committed to an institution under the jurisdiction of the Department of Mental Hygiene, following proceedings under the provisions of sections 1368-1370 of the Penal Code, and who had subsequently been transferred to an institution under the jurisdiction of the Department of Corrections pursuant to an interagency agreement. The court upheld the validity of the interagency agreement under the provisions of section 11256 of the Government Code (55 Cal.2d at pp. 685-691). It noted that commitments could be made to the Department of Mental Hygiene under the following provisions of the Penal Code. Section 1026—when a defendant is found to have been insane at the time an offense was committed; section 1368—when a question of sanity arises prior to judgment; section 3700—concerning prisoners under sentence of death and found to be insane; and section 2960[8]—prisoners found to be insane upon expiration of prison sentence (*id.*, p. 687). (Mention may also be made of section 2684 which authorizes transfer of a mentally ill prisoner undergoing sentence to a state hospital for treatment.) The court took note of the adoption of section 6700.5 of the Welfare and Institutions Code (*id.*, p. 692, fn. 8) and observed, "We regard the enactment of section 6700.5 as a clarification of the propriety of a transfer such as petitioner's (which, as we have seen, had been validly effected in June 1960), not as an indication that the Legislature was of the opinion that the respective departments formerly had no power to make such a transfer." (*Id.*, p. 693.)

As originally adopted, the reference in the second paragraph of the section to "Persons so transferred" (see fn. 3 above) could only refer to persons who were committed to and physically confined in an institution

---

[8]Penal Code sections 2960-2964 were repealed, operative July 1, 1969, by Stats. 1968, ch. 1374, § 3, p. 2637. Apparently proceedings involving prisoners about to be discharged may be taken under general law. (See part 1, § 5000 et seq. of division 5, and part 2, § 3, p. 6250 et seq. of division 6 of the Welfare and Institutions Code, and cf. §§ 6825, 7227, 7350 and 7375.)

under the jurisdiction of the Department of Mental Hygiene immediately prior to their transfer to the institution under the jurisdiction of the Department of Corrections.

In 1963 an entirely new category of persons was brought within the ambit of section 6700.5. It was then amended to include "any person . . . who has been committed for an indeterminate period pursuant to the provisions" of the Welfare and Institutions Code governing mentally disordered sex offenders (see fn. 3 above). This amendment is found in an act (Stats. 1963, ch. 1913, p. 3906) which recast the existing provisions dealing with "sexual psychopaths" into provisions referring to "mentally disordered sex offenders" (see fn. 1 above). The act expressly provided, "Sec. 22. Any person heretofore or hereafter committed to any state institution as a sexual psychopath shall be deemed to have been committed as a mentally disordered sex offender." (Stats. 1963, ch. 1913, § 22, p. 3916.) The act included within its terms provisions for original commitment to an institution under the jurisdiction of the Department of Corrections similar to those under which defendant was committed (*id.,* § 14, amending § 5512), and it continued provisions, like those in the former statute, for recommitment to such an institution (*id.,* §§ 17 and 18, amending §§ 5517 and 5518).

The question then presents itself as to whether section 6700.5 was amended merely to recognize that a person could be committed to an institution under the Department of Corrections as provided in sections 5512 and 5517 and 5518, or whether it was to recognize and ratify that there was a third path, by administrative agreement. *In re Cathey, supra,* suggests the latter (see 55 Cal.2d at p. 692, fn. 8, and p. 693). Furthermore, analysis of the statute indicates that there is a substantial difference between the type of person who may be transferred pursuant to administrative order (§ 6700.5), and one who is committed or recommitted by the court (§§ 5512 or 5517 and 5518).

Section 6700.5, as amended in 1963 and 1965 (see fn. 3, *supra*), presupposes that the person referred to "needs care and treatment." In the case of a court commitment to an institution under the jurisdiction of the Department of Corrections, the court must find that the person subject to the proceedings "would not benefit by care or treatment in a state hospital" (§ 5512), and in the case of a recommitment to such an institution the court must be satisfied that the defendant has not recovered (see §§ 5517 and 5518). Under section 6700.5 the necessity for transfer is the need for "conditions of custodial security which can be better provided within the Department of Corrections." Under the court proceedings there must be a finding that the person is "a danger [formerly menace] to the health and safety of others."

The foregoing demonstrates that there is a valid distinction between a

person committed to an institution under the jurisdiction of the Department of Corrections by formal court proceedings, and a person committed to a state hospital under the jurisdiction of the Department of Mental Hygiene who is transferred by administrative agreement. It is logical that the Legislature would temper authority for such administrative action with an immunity from the consequences which ordinarily follow a court commitment to a prison. The fact that the Legislature did so, does not in the absence of clearer evidence of intent, indicate that all persons committed under the provisions in question, who are confined in an institution under the jurisdiction of the Department of Corrections should be exempt from the laws generally governing those confined in prison. This conclusion is buttressed by the fact that the Legislature in recasting the provisions in present section 7301 (see fn. 3 above) used the following language: "Whenever, in the opinion of the Director of Mental Hygiene and with the approval of the Director of Corrections, any person *who has been committed to a state hospital* pursuant to provisions of the Penal Code or ["who has been committed for an indeterminate period pursuant to the provisions"—deleted] of Article 1 (commencing with section 6300) of Chapter 2 of Part 2 of Division 6 of this code. . . ." (Italics added.) In short, the exemption is limited to those who are committed elsewhere and transferred to prison without further court order.

The statutory history of Penal Code section 4502, and the interpretation given it and related provisions of the Penal Code, support this view. At the time of defendant's commitment in March 1963, section 4502 referred to "Every prisoner committed to a State prison." In *People* v. *White* (1960) 177 Cal.App.2d 383 [2 Cal.Rptr. 202], the defendant had been committed to a state hospital after being adjudged a psychopathic delinquent under former section 7058 of the Welfare and Institutions Code. (Stats. 1939, ch. 997, § 1, p. 2778, as amended. Repealed Stats. 1963, ch. 1368, § 5, p. 2908.) He was transferred to an institution established under the jurisdiction of the Department of Corrections, pursuant to the provisions of former section 7051 (cf. extract from § 5518, fn. 6, above), and subsequently charged with a violation of section 4502 as it read prior to the 1963 amendment. The court concluded, ". . . any person lawfully committed to San Quentin Prison, who is in custody and subject to restraint by reason of legal process, may be prosecuted for violation of Penal Code, section 4502. This, whether he be a patient, a psychopathic delinquent, or a prisoner convicted of a felony." (177 Cal.App.2d at p. 385.)

In upholding the application of the provisions of section 4502 to a Youth Authority ward, the Supreme Court recently stated, "Penal Code, section 4502, as it read in 1961 (the year of petitioner's alleged offense and of his conviction), provided that 'Every prisoner *committed to* a State prison who

. . . has under his custody or control . . . any dirk or dagger or sharp instrument . . . is guilty of a felony. . . .' (Italics added.) It had been judicially declared in 1949 that section 4502 'covered prisoners in a state prison pursuant to a Youth Authority commitment. . . .' (*People* v. *Scherbing,* 93 Cal.App.2d 736, 739 . . .), and the 1963 amendment making the section apply to 'Every person *confined in* a state prison. . . .' (italics added) 'was enacted to clarify the law and not to change it' (*In re Smith,* 64 Cal.2d 437, 440 . . .). Soledad, where petitioner was confined as a ward of the Youth Authority at the time he allegedly possessed knives, is a 'State prison.' (Pen. Code, § 2045.)" (*In re Branch* (1969) 70 Cal.2d 200, 215-216 [74 Cal.Rptr. 238, 449 P.2d 174]. See, in addition to authorities cited, *People* v. *Steely* (1968) 266 Cal.App.2d 591, 597-598 [72 Cal.Rptr. 368]; *People* v. *Cox* (1962) 206 Cal.App.2d 446, 447 [23 Cal.Rptr. 756]; and *People* v. *Temple* (1962) 203 Cal.App.2d 654, 658 [21 Cal.Rptr. 633].) This case does not present the situation where a person is confined at an institution other than "a state prison" as referred to in section 4502 (cf. *People* v. *Romo* (1967) 256 Cal.App.2d 589, 591-595 [64 Cal.Rptr. 151]; and see *People* v. *Hasson* (1968) 265 Cal.App.2d 865, 866 [71 Cal.Rptr. 664]), nor does section 4502 require that the violator be "undergoing a sentence . . ." (cf. *People* v. *Rodriguez* (1963) 222 Cal.App.2d 221, 225-227 [34 Cal.Rptr. 907], construing Pen. Code, § 4501.5 as it read [Stats. 1959, ch. 794, § 2, p. 2807] prior to the deletion of that language in 1963 [Stats. 1963, ch. 2027, § 2, p. 4168]).

█ It is recognized that proceedings for commitment as a sex psychopath or mentally disordered sex offender are civil in nature. (See, *In re Bevill* (1968) 68 Cal.2d 854, 858 [69 Cal.Rptr. 599, 442 P.2d 679]; *People* v. *McCracken* (1952) 39 Cal.2d 336, 346 [246 P.2d 913]; *People* v. *Barzee* (1963) 213 Cal.App.2d 139, 141 [28 Cal.Rptr. 692]; *People* v. *Redford* (1961) 194 Cal.App.2d 200, 204 [14 Cal.Rptr. 866]; *People* v. *Hymes* (1958) 161 Cal.App.2d 668, 673 [327 P.2d 219]; *People* v. *Levy* (1957) 151 Cal.App.2d 460, 463-464 [311 P.2d 897]; and *People* v. *Olds* (1956) 140 Cal.App.2d 156, 157 [294 P.2d 1034].) █ Nevertheless, when a person is duly committed to a state prison through court proceedings, he is included in the description—"Every person confined in a State prison. . . ."

█ "The statute was passed to protect the guards and other inmates of the prison. It is a reasonable regulation. The fact that the particular inmate may be unlawfully confined certainly does not confer upon him the right to possess weapons denied to other inmates. If the purpose of the statute is to be achieved, and obviously the purpose is a sound one, it makes no difference why the prisoner has been confined, or that he may be legally

entitled to release. While an inmate, necessity requires that the prisoner submit to prison regulations, and certainly section 4502 is a reasonable regulation." (*People* v. *Scherbing* (1949) 93 Cal.App.2d 736, 742-743 [209 P.2d 796]. See also, *People* v. *Steely, supra,* 266 Cal.App.2d 591, 595; and see Pierce, P. J., dissenting, *People* v. *Romo, supra,* 256 Cal.App. 2d at p. 599.)

In view of this purpose, section 4502 is construed as applying to defendant as a sexual psychopath confined to a state prison under a court commitment, and the exemption of section 6700.5 of the Welfare and Institutions Code is limited to persons so confined pursuant to administrative action taken under that section.

The judgment is affirmed.

Molinari, P. J., and Elkington, J., concurred.