[No. A036921. First Dist., Div. Three. Mar. 4, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN JAMES HOLDSWORTH, Defendant and Appellant.

[No. A038560. First Dist. Div. Three. Mas. 4, 1988.]

In re STEVEN JAMES HOLDSWORTH on Habeas Corpus.

**COUNSEL**

Robert J. Calhoun and Matthew Zwerling, under appointments by the Court of Appeal, for Defendant and Appellant and Petitioner.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Stan M. Helfman and David H. Rose, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WHITE, P. J.**—Appellant Steven Holdsworth was in a Contra Costa County jail after being sentenced for assault with a deadly weapon. (Pen. Code, § 245, subd. (a)(1).) Four days after sentence was imposed, he

destroyed jail property. He was later convicted of this crime. (Pen. Code, § 4600.)[1] The trial court determined that the crime should be sentenced as an in-prison offense under section 1170.1, subdivision (c). The court accordingly gave appellant a six-year sentence fully consecutive to the assault sentence, three years for the section 4600 offense and three years for three prior prison terms. (§ 667.5.) The question before us is whether section 1170.1, subdivision (c), applies to a defendant who has been sentenced for a felony but has yet to be delivered to state prison.[2] A subissue is whether appellant could be sentenced under section 1170.1, subdivision (c), because he was on parole and subject to a parole hold at the time of his crime.

■■■ The issue in this case arises because the determinate sentencing law treats in-prison offenses differently than out-of-prison offenses. Sentences for out-of-prison offenses are ordinarily calculated under subdivision (a) of section 1170.1. Subdivision (a) states, inter alia, that the greatest term of imprisonment is the principal term and that consecutive sentences are subordinate terms, served at one-third of the middle term. Subdivision (c) applies to "felonies committed while the person is confined in a state prison." Subdivision (a) begins with the words "[e]xcept as provided in subdivision (c)," making clear that felonies committed in prison are exempt from the general sentencing scheme. (*In re Sims* (1981) 117 Cal.App.3d 309, 313 [172 Cal.Rptr. 608].) A sentence under subdivision (c) will generally be longer than under subdivision (a). This is so because subdivision (c) requires that when an in-prison offense is imposed consecutively,[3] it is fully consecutive to the offense for which the defendant was imprisoned. In other words, the in-prison offense is treated as a new principal term rather than as a subordinate term to the out-of-prison offense. (*People* v. *McCart* (1982) 32 Cal.3d 338, 344 [185 Cal.Rptr. 284, 649 P.2d 926]; *Sims, supra,* at p. 314.)[4]

We hold that the court erred in applying section 1170.1, subdivision (c). We reach this conclusion based primarily on the language of section 1170.1, subdivision (c), itself: "felonies committed while the person is *confined in a state prison.*" The word "confined" denotes physical restraint with a bound-

---

[1] All further statutory references are to the Penal Code.

[2] This question has not been resolved by prior cases. (*In re Kindred* (1981) 117 Cal.App.3d 165, 168 [172 Cal.Rptr. 468].)

[3] In *People* v. *Arant* (1988) *post,* page 294 [244 Cal.Rptr. 645], the Fifth Appellate District held that a court has discretion to impose punishment for an in-prison offense either concurrently or consecutively to that provided for an out-of-prison offense, contrary to its prior ruling in *People* v. *Lamont* (1986) 177 Cal.App.3d 577, 583-585 [223 Cal.Rptr. 52].

[4] We deal here solely with the relationship of in-prison offenses to out-of-prison offenses. See *McCart, supra,* regarding the manner in which subdivision (c) directs that multiple in-prison offenses be treated in relation to each other. (The statute was designated subdivision (b) at the time of *McCart.*)

ary. (See Webster's New Internat. Dict. (3d ed. 1966) p. 476.) The phrase "state prison" logically means any institution designated by the state as a prison. Sections 4504, subdivision (a), and 5003 indicate that the phrase "state prison" can include institutions other than prisons over which the Department of Corrections has jurisdiction. ■ However, the Department of Corrections does not have jurisdiction over local jails.[5] ■ Thus, section 1170.1, subdivision (c), cannot apply to a convicted felon awaiting delivery to a state prison. (Cf. *People* v. *Mitchell* (1988) *post,* p. 300 [244 Cal.Rptr. 803]; *People* v. *Jones* (1980) 110 Cal.App.3d 75, 77 [167 Cal.Rptr. 571] [one who escapes from local facility or jail must be sentenced under § 1170.1, subd. (a)].)

■ This interpretation is supported by the analogous Penal Code provision of section 4502. This statute makes criminal certain acts when committed by "[e]very person confined in a state prison." Before 1963, section 4502 applied to "[e]very prisoner committed to a state prison." (*In re Smith* (1966) 64 Cal.2d 437, 440 [50 Cal.Rptr. 460, 412 P.2d 804].)[6] Despite the "committed to" language, courts applied section 4502 to persons who were physically confined in a state prison, but who had not been committed to a state prison as convicted felons. (See *People* v. *Rodriguez* (1963) 222 Cal.App.2d 221, 224-226 [34 Cal.Rptr. 907] [Youth Authority commitment to Soledad]; *People* v. *White* (1960) 177 Cal.App.2d 383, 385 [2 Cal.Rptr. 202] [transfer of adjudged psychopath to San Quentin]; *People* v. *Scherbing* (1949) 93 Cal.App.2d 736, 739 [209 P.2d 796], overruled on other grounds in *People* v. *Olivas* (1976) 17 Cal.3d 236, 257 [131 Cal.Rptr. 55, 551 P.2d 375] [Youth Authority commitment to San Quentin].) As stated in *In re Smith, supra,* at page 440, the amendment was "enacted to clarify the law and not to change it." Thus, cases decided after the amendment have rejected the claim that the amendment changed the law as regards nonfelons in

---

[5]There are two statutes which give the Department of Corrections jurisdiction over persons in a local jail. Section 2900, subdivision (b)(1), provides: "As an emergency measure, the Director of Corrections may direct that persons convicted of felonies may be received and detained in jails or other facilities and that the judgment will commence to run upon the actual delivery of the defendant into such place and that any persons previously received and confined for conviction of a felony may be, as an emergency, temporarily housed at such place and the time during which such person is there shall be computed as a part of the term of judgment."

Section 2910, subdivision (a), provides in part: "The Director of Corrections may enter into an agreement with a city, county, or city and county, to permit transfer of prisoners in the custody of the Director of Corrections to a jail or other adult correctional facility of such city, county, or city and county, if the sheriff or corresponding official having jurisdiction over the facility has consented thereto. . . ."

Neither of these statutes is applicable in this case.

[6]At the same time section 4502 was amended, sections 4501 and 4501.5 were amended to read "confined in a state prison" in place of "undergoing a sentence of less than life." (Stats. 1963, ch. 2027, §§ 1-2, p. 4168.)

state prison. (*In re Branch* (1969) 70 Cal.2d 200, 215-217 [74 Cal.Rptr. 238, 449 P.2d 174]; *In re Smith, supra,* 64 Cal.2d at p. 440; *People* v. *Lopez* (1969) 1 Cal.App.3d 672, 681 [82 Cal.Rptr. 121].) The result in these cases reflects the legislative intent to promote the safety of guards and inmates, since the law furthers this goal regardless of the reason the person is in prison. (*People* v. *Superior Court* (*Gaulden*) (1977) 66 Cal.App.3d 773, 778 [136 Cal.Rptr. 229], overruled on other grounds in *People* v. *Sumstine* (1984) 36 Cal.3d 909, 919, fn. 6 [206 Cal.Rptr. 707, 687 P.2d 904]; *Lopez, supra,* at pp. 681-682.)

The amendment of section 4502 and the cases interpreting this statute make clear that it is the defendant's physical presence in a state prison that determines the applicability of this statute. The court in *Smith,* by stating that the amendment was "enacted to clarify the law and not to change it," presumably meant that after the amendment, the law was now clear that the place of confinement rather than the status of the confinee was determinative.

Since section 1170.1, subdivision (c), also reads "confined in a state prison," it is reasonable to assume the Legislature, when it enacted the determinate sentencing law, intended to give section 1170.1, subdivision (c), the same meaning. (*Selfa* v. *Superior Court* (1980) 109 Cal.App.3d 182, 187 [167 Cal.Rptr. 153] [statutes relating to the same subject matter should be harmonized].) The amendment of section 4502 shows that the Legislature knows the difference between "confined" and "committed," and that when it says "confined," it means actual, physical confinement.

Our conclusion is also consistent with the laws which define when a prison sentence begins. Section 2900, subdivision (a), provides: "The term of imprisonment fixed by the judgment in a criminal action commences to run only upon the actual delivery of the defendant into the custody of the Director of Corrections at the place designated by the Director of Corrections as a place for the reception of persons convicted of felonies." In conjunction with this provision, subdivision (e) of section 2900.5 provides: "It shall be the duty of any agency to which a person is committed to apply the [presentence credit] for the period between the date of sentencing and the date the person is delivered to such agency."

These statutes instruct that delivery, the physical act of transporting the defendant to a state penal institution, is what triggers the running of a prison sentence. After sentencing and before delivery, the defendant's custody is considered presentence time to be credited against the actual prison term. Logically, a person cannot be "confined in a state prison" until he has been "delivered" to a state prison. Read in light of sections 2900, subdivi-

sion (a), and 2900.5, subdivision (e), the word "confined" as used in subdivision (c) of section 1170.1 must mean literal confinement in a state prison.

Respondent urges us to adopt the reasoning of *People* v. *Lamont, supra,* 177 Cal.App.3d 577, *People* v. *Nick* (1985) 164 Cal.App.3d 141 [210 Cal.Rptr. 137], and *People* v. *Pitcock* (1982) 134 Cal.App.3d 795 [184 Cal.Rptr. 772]. These cases considered whether a convicted felon confined in a nonprison setting could be sentenced under section 1170.1, subdivision (c). They held the statute did apply. There is a critical difference, however, between these cases and this case. There, the defendants had been physically delivered to a state institution. Here, no such delivery occurred. Appellant was not confined in any type of state institution when he committed his crime.

This distinction is found explicitly in *Nick* and implicitly in *Lamont*. In *Nick,* the court held that the defendant's confinement in a conservation camp made the provisions of section 1170.1, subdivision (c), applicable. Citing *Pitcock*,[7] the court stated: "In light of the fact that appellant was originally committed to the Department of Corrections in 1980, *and was delivered to the custody of the director of that department at that time,* he is properly treated as a prisoner confined to a state prison under statutes which proscribe acts performed while so confined." (*People* v. *Nick, supra,* 164 Cal. App.3d at p. 146, italics added.)

In *Lamont,* the court held that section 1170.1, subdivision (c), applied to a defendant residing in a halfway house and participating in a work furlough program. (*People* v. *Lamont, supra,* 177 Cal.App.3d at p. 583.) The court examined subdivisions (a) and (b) of section 4504 and subdivision (q) of section 5003. (*Id.,* at pp. 582-583.) The relevant portions of the former statute, which deals with offenses by prisoners, read: "For purposes of this chapter: [¶] (a) A person is deemed confined in a 'state prison' if he is confined in any of the prisons and institutions specified in Section 5003 by order made pursuant to law, . . . [¶] (b) A person is deemed 'confined in' a prison although, at the time of the offense, he is temporarily outside its walls or bounds for the purpose of serving on a work detail or for the purpose of confinement in a local correctional institution pending trial or for any other purpose for which a prisoner may be allowed temporarily outside the walls or bounds of the prison, . . ." The subdivisions of section 5003 list the places over which the Department of Corrections has jurisdic-

---

[7] In *Pitcock,* the court confined itself to the narrow issue of the exact status of the Deuel Vocational Institution. The court found that even before determinate sentencing was instituted, a convicted felon confined in Deuel was considered to be confined in a state prison, and that the enactment of a special statute proscribing escape from Deuel did not evince a legislative intention not to consider the institution as a state prison. (*Id.,* at pp. 802-805.)

tion; subdivision (q) adds: "Such other institutions and prison facilities as the Department of Corrections or the Director of Corrections may be authorized by law to establish."

The result in *Lamont* is correct because the defendant was in effect serving his sentence in a halfway house. The defendant had been delivered to a state institution after being sentenced; the only question was a semantic one of whether the halfway house constituted an institution or prison facility under section 5003, subdivision (q), and, by extension, a state prison for purposes of section 1170.1, subdivision (c). (*People* v. *Lamont, supra,* 177 Cal.App.3d at p. 583.) The question in this case is quite different. Appellant had not been delivered to any type of state institution when he committed his crime. Therefore, the question in this case is a threshold one of whether section 1170.1, subdivision (c), may apply before delivery to any state institution. This question was not at issue in *Lamont, Nick* or *Pitcock.*

 Respondent contends that section 1170.1, subdivision (c), applies because appellant was a parolee in custody and subject to a parole hold at the time of the instant crime. We conclude that these facts are not determinative of the issue. Even though appellant was a parolee in custody, and even if appellant was subject to a parole hold,[8] he could not be sentenced under section 1170.1, subdivision (c), because he was not then physically confined in a state prison or state institution.

Respondent argues that appellant's parole status made him a state prisoner. Respondent relies on the theory that a parolee is in the constructive or legal custody of the state. (See §§ 3000, subds. (a) and (d), 3056;[9] *People* v. *Britton* (1984) 156 Cal.App.3d 689, 695-696 [202 Cal.Rptr. 882].) This argument is answered by section 4504, subdivision (b), which states in part: "[A] prisoner who has been released on parole is not deemed 'confined in' a prison for purposes of this chapter." This section makes clear that a parolee who commits a crime has not committed an in-prison offense unless he is in a prison at that time. While this statute by its terms is limited to defining offenses by prisoners, its language is not explicitly exclusive, and, as noted above, the similarity of language between section 4504, subdivision (b), and

---

[8] The only reference to a parole hold in the record is a statement by the trial judge. The judge may have relied on this fact in his ruling since he stated that the parole hold theory was "one that frankly impresses me." Were we to find that the parole hold made appellant eligible for sentencing under section 1170.1, subdivision (c), we would agree with appellant that remand would be necessary to determine if in fact there was such a parole hold and, if so, whether the hold was still in effect at the time of the crime.

[9] Section 3000 speaks of the parole period as a form of custody, and the waiver or completion of the period of parole as a "discharge[ ] from custody." Section 3056 provides: "Prisoners on parole shall remain under the legal custody of the department [of Corrections] and shall be subject at any time to be taken back within the inclosure of the prison."

section 1170.1, subdivision (c), requires that the statutes be harmonized. *People* v. *Lamont, supra,* did rely on the provisions of section 4504 as an aid in interpreting section 1170.1, subdivision (c). (*People* v. *Lamont, supra,* 177 Cal.App.3d at pp. 582-583.)

Thus, appellant's constructive or legal custody is not the issue, for it is the place of confinement, not the status of the person confined, that is decisive. (*In re Branch, supra,* 70 Cal.2d at pp. 215-217; *In re Smith, supra,* 64 Cal.3d at p. 440; *People* v. *Lopez, supra,* 1 Cal.App.3d at p. 681.)

It is also noteworthy that under the determinate sentencing law, the parole period is imposed separately from and is not part of the prison sentence. A prisoner is not paroled until he has completed his sentence. (*People* v. *Britton, supra,* 156 Cal.App.3d at pp. 695-696; *People* v. *Mathews* (1980) 102 Cal.App.3d 704, 712 [162 Cal.Rptr. 615].) Thus, appellant was not a prisoner of the state until he was delivered to state prison pursuant to his section 4600 conviction.

For the same reasons, any parole hold did not transform appellant's local custody into confinement in a state prison. A parole hold cannot be equated with the delivery of a convicted felon to a state prison. A parole hold is "[a]n authorization by a departmental employee that a parolee be held in custody pursuant to Section 3056 of the Penal Code." (Cal. Dept. of Corrections, Parole Procedures Manual—Felon (Feb. 8, 1985) p. RC6 (hereafter Parole Procedures Manual)). It occurs when a parole agent, having reason to believe the parolee has violated parole, causes the parolee to be brought into custody or refrained from obtaining release on bail. (*In re Law* (1973) 10 Cal.3d 21, 24, fn. 2 [109 Cal.Rptr. 573, 513 P.2d 621]; Parole Procedures Manual, *supra,* ch. 8, art. 4, § 840, subd. (a), p. 4-8.1.) The parole agent's decision to place the hold must be reviewed within four days. (Cal. Admin. Code, tit. 15, §§ 3530, subd. (c), 3532, subd. (a); Parole Procedures Manual, *supra,* ch. 8, art. 4, §§ 840, subd. (a), p. 4-8.1, 842, p. 4-8.2.)[10] The hold may not be longer than six months or the remainder of the parole period, whichever comes first. (Cal. Admin. Code, tit. 15, § 3535; Parole Procedures Manual, *supra,* § 845, p. 4-8.5.)

The parole agent may place the parolee in a local jail or, if he is already in jail, prevent him from being released on bail, on his own recognizance or after the expiration of any sentence the parolee may be required to serve. (*In re Law, supra,* 10 Cal.3d at p. 24, fn. 2; Cal. Admin. Code, tit. 15, § 3530, subd. (d).) A parolee under a parole hold may be transferred to a state

---

[10] The initial review is accomplished by a "unit supervisor." Higher levels of review are by the "district administrator" and the Board of Prison Terms. (Parole Procedures Manual, *supra,* ch. 8, art. 4, § 842, subds. (a)-(c), pp. 4-8.2-4-8.3.)

prison only after a hearing except for medical reasons or "[i]f officials of a local jail cannot or will not retain a parolee in custody pending a hearing and a violation report is being submitted to the Board of Prison Terms, . . ." (Parole Procedures Manual, *supra,* ch. 8, art. 4, § 846, subds. (a) and (b), p. 4-8.5; Cal. Admin. Code, tit. 15, § 2605.)

■■■ These rules show that a parole hold is a temporary measure to restrain a parolee suspected of violating parole. It is not a prison sentence, nor does it transform the parolee into a state prisoner. The parole agent has no power to confine a parolee in a state prison in the first instance. His power is limited to booking him into a local jail. Only later may a parolee be transferred to state prison, if warranted under the circumstances. If such a transfer occurs, and the parolee commits a crime, he would, under the reasoning of *Branch, Smith,* and *Lopez, supra,* be subject to section 1170.1, subdivision (c).[11] Since no transfer occurred in this case, section 1170.1, subdivision (c), did not apply.

Having concluded that appellant could not be sentenced under section 1170.1, subdivision (c), the court was required to impose sentence under section 1170.1, subdivision (a). In *People* v. *Tassell* (1984) 36 Cal.3d 77, 90 [201 Cal.Rptr. 567, 679 P.2d 1], the Supreme Court held that prior prison term enhancements may be imposed only once in a single sentencing package. Therefore, the enhancements attached to the section 4600 offense must be stricken.

That portion of the judgment imposing sentence for the section 4600 offense under section 1170.1, subdivision (c), is reversed. The court is directed to impose sentence under section 1170.1, subdivision (a). In so doing, the court must decide whether to impose this sentence consecutively or concurrently to the prior assault sentence. In either event, the prior prison term enhancements under section 667.5 attaching to the section 4600 offense must be stricken. In all other respects, the judgment is affirmed.[12]

Merrill, J., concurred.

---

[11] The same reasoning should hold where a parolee's parole is revoked. There is authority to return a parole violater to state prison. (See §§ 3060.5, 3084; Cal. Code Regs., tit. 15, § 2646, subd. (c).) A parole violater is also eligible for treatment in a local facility (Cal. Admin. Code, tit. 15, § 2646, subd. (c)(2)) or for work furlough (Cal. Admin. Code, tit. 15, § 2646, subd. (c)(6)). Consistent with our holding as to persons subject to parole holds, whether a person who commits a crime after his parole is revoked can be sentenced under section 1170.1, subdivision (c), depends on whether he is physically confined in a state prison within the meaning of sections 4504, subdivision (a) and 5003.

[12] Appellant raises an additional contention in a habeas corpus petition (*In re Holdsworth,* A038560), which has been consolidated with the appeal for purposes of argument and briefing, and which we have considered in conjunction with the appeal. We deny the petition today by separate order.

**BARRY-DEAL, J.**—I concur in the reasoning and the judgment of the lead opinion. I write separately only to suggest that the Legislature reexamine the scope of Penal Code section 1170.1, subdivision (c). As stated by Presiding Justice White, the legislative scheme dealing with crimes committed by those confined in state prison "reflects the legislative intent to promote the safety of guards and inmates . . . ." (Majority opn., *ante,* p. 258.) I submit that this intent might best be served if the more severe sentences provided for in the statute under consideration were applied to those committed to state prison but temporarily confined in local jails awaiting delivery to the Department of Corrections.

On March 29, 1988, the opinion was modified to read as printed above.