[No. F005052. Fifth Dist. Feb. 11, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
BRETT ALLEN LAMONT, Defendant and Appellant.

COUNSEL

Paula F. Schmidt, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Edmund D. McMurray, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

HAMLIN, J.—On October 30, 1984, in West Kern County Municipal Court, defendant pleaded guilty to violation of Penal Code section 666,[1]

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

petty theft with a prior conviction for petty theft, a felony. Pursuant to section 1170.1, subdivision (c), the trial court sentenced defendant to the midterm of two years for the violation of section 666, to be fully consecutive to defendant's three-year state prison sentence imposed on November 14, 1983, for possession of a controlled substance in violation of Health and Safety Code section 11377.

Defendant appealed, urging sentencing errors. The principal issue presented is whether defendant's confinement in a "halfway house" on a work furlough program at the time he committed the petty theft to which he pleaded guilty constituted confinement in a state prison within the meaning of section 1170.1, subdivision (c). We conclude it did and affirm the judgment.

Since defendant's conviction rested on his guilty plea, the only relevant facts appear in our discussion of the issues on appeal.

### DISCUSSION

*Was defendant properly sentenced to a consecutive term for the instant offense?*

Defendant mounts a threefold attack on the propriety of the trial court's sentence in this case, to wit: a *full* midterm (two-year) consecutive sentence for the current felony conviction of petty theft. Defendant contends (1) the trial court failed to state adequate reasons for imposing a consecutive sentence, (2) there were no reasons for imposition of a consecutive sentence, and (3) any consecutive sentence imposed should have been at one-third the median term (eight months) rather than the full two-year term.

All of defendant's contentions turn on the propriety of sentencing defendant pursuant to the provisions of section 1170.1, subdivision (c). That statute provides: "(c) In the case of any person convicted of one or more felonies committed while such person is confined in a state prison, or is subject to reimprisonment for escape from such custody and the law either requires the terms to be served consecutively or the court imposes consecutive terms, the term of imprisonment for all such convictions which such person is required to serve consecutively shall commence from the time such person would otherwise have been released from prison. If the new offenses are consecutive with each other, the principal and subordinate terms shall be calculated as provided in subdivision (a), except that the total of subordinate terms may exceed five years. The provisions of this subdivision shall be applicable in cases of convictions of more than one offense

in different proceedings, and convictions of more than one offense in the same or different proceedings."

At the initial sentencing hearing on December 6, 1984, defense counsel identified the question to be decided as "whether or not the consecutive sentence is two years full term or simply one-third of the mid term." Defense counsel noted that the report of the probation officer recommended "for reasons that are quite appropriate . . . the defendant be sentenced on this case consecutive to the time that he is presently serving on prior prison sentences." However, defense counsel contended the consecutive term should be calculated at one-third the median term as specified in section 1170.1, subdivision (a), instead of under subdivision (c), quoted above.

The trial court heard argument on whether or not defendant was "confined in a state prison" and continued defendant's sentencing to research the matter. When the hearing was resumed on December 10, the trial court stated in part:

"Also section 1170.1 of the Penal Code provides in cases of a person who has been convicted of one or more felonies while such person is confined in a state prison and the court imposes consecutive terms, the term of imprisonment for all such convictions which such person is required to serve consecutively, shall commence from the time such person would have otherwise been released from prison.

"For the reasons indicated above and in view of the defendant's long record, we're going to deny probation, the application for probation, and he will be sentenced to the Department of Corrections for the midterm of two years. Said sentence will be served fully consecutive with the sentence imposed in superior court case Number 21422 [for conviction of a violation of Health & Saf. Code, § 11377].

"And we agree with the probation department's observation that consecutive sentences should be imposed because the crimes and their objectives were independent of each other. They were committed at different times and different places rather than being committed so close in time and place to indicate a single period of abhorrent [sic] behavior."

■ Defendant contends section 1170.1, subdivision (c), does not apply here since he was not "confined in a state prison" at the time he committed the instant offense. He argues that the statutory language, "confined in a state prison," is to be read narrowly so that only offenses committed while confined within the four walls of an institution defined as a state prison by sections 2000 through 2049.6 are punishable by imposition of a *full* consec-

utive term. Since he was confined in a "halfway house" on a work furlough program at the time of the instant petty theft, he was not "confined in a state prison" and therefore should have received as a consecutive sentence only one-third the median term under section 1170.1, subdivision (a). The People counter that the appropriate reading of section 1170.1, subdivision (c) to effectuate the legislative intent demands a broader definition so that persons committed to state prison and serving a state prison sentence, i.e., not paroled from state prison, are subject to the full consecutive provisions of that subdivision regardless of the place of confinement.

In *People* v. *Nick* (1985) 164 Cal.App.3d 141, 146 [210 Cal.Rptr. 137], the court rejected a contention that a defendant confined to a conservation camp was not within the provisions of section 1170.1, subdivision (c). The court stated in part: "Appellant urges that section 1170.1, which speaks in terms of persons confined to 'state prison,' does not apply to him because he was confined at a conservation camp. In light of the fact that appellant was originally committed to the Department of Corrections in 1980, and was delivered to the custody of the director of that department at that time, he is properly treated as a prisoner confined to state prison under statutes which proscribe acts performed while so confined. [Citation omitted.]" (Fn. omitted.)

The court in *People* v. *Nick, supra,* relied upon *People* v. *Pitcock* (1982) 134 Cal.App.3d 795 [184 Cal.Rptr. 772], which upheld imposition of a full consecutive sentence for an attempted escape from Deuel Vocational Institution (DVI). The *Nick* court makes clear that the defendant in *Pitcock* was sentenced under the provisions of section 1170.1, subdivision (b), which was redesignated as subdivision (c) by statutory amendment in 1982. The length of the two-year term imposed in *Pitcock* had been derived from a combined reading of sections 18 and 2042, but the basis for the defendant's argument was "a long-running ambiguity over the exact status of DVI. Is it a state prison? Is it some form of a state correctional facility other than a state prison? Is it both? Is it sometimes one thing and sometimes another?" (*Id.,* at p. 802.)

Pointing out that it had addressed these questions in *People* v. *Romo* (1967) 256 Cal.App.2d 589 [64 Cal.Rptr. 151], a case on which defendant now relies, the *Pitcock* court reiterated its conclusion that "DVI is a state prison with respect to those inmates in the custody of the Department of Corrections and 'an institution or facility outside the state prison category in relation to those inmates who are wards of the Youth Authority.'" (*People* v. *Pitcock, supra,* 134 Cal.App.3d at p. 803.) With respect to wards of the Youth Authority, *Romo* was reluctantly followed by this court in *People* v. *Hasson* (1968) 265 Cal.App.2d 865 [71 Cal.Rptr. 664]. The *Pitcock*

court's resolution of the ambiguity regarding DVI was codified in 1982 by the amendment of section 2042, concerning *minors* escaping or attempting to escape from DVI and the addition of section 4530.5 providing, "For the purposes of punishing escapes or attempts to escape under section 4530, a person is deemed confined in a 'state prison' if he is an adult prisoner confined in the Deuel Vocational Institution."

Were state prisons limited to those facilities enumerated in sections 2000 through 2049.6, as defendant asserts, the decision in *People* v. *Nick, supra,* would be erroneous. However, that decision is long since final, as is the decision in *People* v. *Mercurio* (1985) 169 Cal.App.3d 1108, 1112-1113 [216 Cal.Rptr. 1], a decision holding confinement in a halfway house is time spent "in custody" for the purpose of computing presentence custody credits under section 2900.5. These cases are consistent with the rationale of *People* v. *Pitcock, supra,* an even older case. Finally, any contention that a person committed to a halfway house to complete a state prison term prior to parole is no longer "confined in a state prison" for purposes of section 1170.1, subdivision (c), may be rebutted by analogy to section 4504. That section defines the term "confined in a state prison" relative to offenses by prisoners as follows:

"For purposes of this chapter:

"(a) A person is deemed confined in a 'state prison' if he is confined in any of the prisons and institutions specified in Section 5003 by order made pursuant to law, including, but not limited to, commitments to the Department of Corrections or the Department of the Youth Authority, regardless of the purpose of such confinement and regardless of the validity of the order directing such confinement, until a judgment of a competent court setting aside such order becomes final.

"(b) A person is deemed 'confined in' a prison although, at the time of the offense, he is temporarily outside its walls or bounds for the purpose of serving on a work detail or for the purpose of confinement in a local correctional institution pending trial or for any other purpose for which a prisoner may be allowed temporarily outside the walls or bounds of the prison, but a prisoner who has been released on parole is not deemed 'confined in' a prison for the purposes of this chapter."

In addition to 16 specifically named facilities, section 5003, subdivision (q), provides that the department has jurisdiction over "[s]uch other institutions and prison facilities as the Department of Corrections or the Director

of Corrections may be authorized to establish." Section 6250, subdivision (a), provides in part that "The Director of Corrections may establish and operate facilities to be known as community correctional centers." The subdivision goes on to provide that such a center may be established by the awarding of a contract. Defendant himself pointed out at the sentencing hearing that the halfway house where he was confined, known as the Turning Point, "is a church organization funded by them. It's contracted to the C.D.C." The People have argued, and defendant has not contested, that a halfway house "is technically known as a 'community correctional center' or 're-entry facility.'"[2] Defendant's argument that he was required to pay 25 percent of his income for room and board while confined in the halfway house does nothing to defeat the premise that a halfway house is within the meaning of section 5003, subdivision (q), since such fees are specifically authorized by section 6253.

Section 6251 states "The primary purpose of such facilities is to provide housing, supervision, counseling, and other correctional programs for persons committed to the Department of Corrections." Section 6253, subdivision (b), provides that "Inmates transferred to community correctional centers remain under the legal custody of the department . . . ." Finally, section 6254 provides that "The Director of Corrections may grant furloughs to residents of community correctional centers for the purpose of employment, education, including vocational training, or arranging a suitable employment and residence program." The department's power to contract for work furlough programs is specifically authorized by sections 6260 through 6266. Therefore, since both the halfway house where defendant resided and the work furlough program in which he participated are "other institutions and prison facilities" which the Department of Corrections or the Director of Corrections is authorized by law to establish, the combined reading of sections 4504, subdivision (a), and 5003, subdivision (q), demonstrates defendant was "confined in a state prison" during such residency and participation. The trial court properly applied section 1170.1, subdivision (c), in sentencing defendant to a full consecutive two-year term.

■■■ Defendant contends, in the alternative, that even if section 1170.1, subdivision (c) applies to him because he committed the instant offense while he was "confined in a state prison," that statute does not require the court to impose consecutive sentences. He points out that after subdivision (c) refers to convictions of one or more felonies while confined in a state

---

[2]The People cited as authority for this premise the California Department of Corrections Classification Manual.

prison, it goes on to provide "and the law either requires the terms to be served consecutively or the court imposes consecutive terms, the term of imprisonment for all such convictions which such person is required to serve consecutively shall commence from the time such person would otherwise have been released from prison." Defendant asserts that the word "terms" as used in the quoted portion of the statute refers to the existing term being served and the term imposed for the new offense or offenses. Thus, he argues, the clear implication is that the court retains sentencing discretion to order a sentence for the "in prison" offense(s) be served concurrently with the existing sentence.

The difficulty with the interpretation defendant advances is that it ignores the phrase immediately following, "the term [singular] of imprisonment for all such convictions which such person is required to serve consecutively *shall commence* from the time such person would otherwise have been released from prison." (Italics added.) Reading the statute correctly, the first use of the word "terms" in the plural form applies to multiple terms imposed for multiple "in prison" offenses. First, a sentence must be calculated for all "in prison" offenses. These terms should be consecutive if the law requires them to be so, or they may be consecutive if the sentencing court, guided by applicable rules of court, makes them so. The resulting "term" (singular) for all "in prison" offenses must be imposed consecutively to the existing term a defendant is serving at the time the new offenses are committed. Thus, we believe, contrary to defendant's contention, section 1170.1, subdivision (c) does mandate a consecutive term for one or more "in prison" offenses. As will appear from our discussion below, such an interpretation is consistent with both the legislative intent and our Supreme Court's interpretation of the statute.

Section 1170.1 was added to the Penal Code in 1976 as part of the Determinate Sentencing Act. Despite the extensive legislative history pertinent to these statutes, the only reference to the particular provision with which we are concerned is in a letter from John A. Nejedly, author of Senate Bill No. 42 (1975-1976 Reg. Sess.), to the Honorable John E. Longinotti, Presiding Judge, Superior Court of Santa Clara County, stating in part: "Nothing in this bill prevents prosecution in outside court where all of the constitutional guarantees of our system are provided for all when the in-prison violation is of the penal code and particularly when it is as grave as 'stabbing a guard'. However, there is a provision that is more stringent than current law regarding the instance where a prisoner is convicted of a felony while in prison. *That provision requires a consecutive sentence for such conviction.*" (Italics added.) ■ See also *In re Sims* (1981) 117 Cal.App.3d 309, 314 [172 Cal.Rptr. 608], "The true legislative intent in

enacting subdivision (b) [redesignated subdivision (c) by the 1982 amendment] applicable to crimes committed by state prison inmates, is to require that they serve their full term for such conviction upon the completion of their term for other offenses for which they were convicted. The Legislature has thus made clear that a person who commits offenses while in prison is not entitled to the usual one-third of the middle term for consecutively imposed sentences. Any other reading of the section would make subdivision (b) superfluous"; *Review of Selected 1977 California Legislation* (1978) 9 Pacific L.J. 281, 473; *Review of Selected 1976 California Legislation* (1977) 8 Pacific L.J. 165, 285.

Similarly, in *People* v. *McCart* (1982) 32 Cal.3d 338, 340 [185 Cal.Rptr. 284, 649 P.2d 926], the Supreme Court found itself "once again [required] to interpret and properly apply the complex provisions of the Determinate Sentencing Act." There the appellant had been sentenced to a six-year consecutive term for an "in prison" offense and later committed a second "in prison" offense. The court concluded that "a single term, consisting of a principal and a subordinate term, should be calculated for both in-prison offenses. This term shall begin to run at the end of the prison term imposed for appellant's original 'outside' offense." (*Ibid.* See also *People* v. *Mercurio, supra,* 169 Cal.App.3d at p. 1113, fn. 2.)

In the instant case, the trial court agreed with the recommendation of the probation officer that defendant receive a full sentence for the in-prison offense, petty theft, to be served consecutive to the prison sentence imposed for defendant's violation of probation for possession of heroin. The reasons underlying the probation officer's recommendation, and accepted by the trial court, were (1) the crimes and their objectives were independent of each other and (2) the crimes were committed at different times and places rather than being committed so closely in time and place to indicate a single period of aberrant behavior.[3] We agree with defendant's argument that, under the circumstances, these reasons could not justify imposition of consecutive terms. The separate nature of the in-prison offense is so inherent in the circumstances that it approaches an impermissible dual use of facts. However, prior to any reliance on the probation officer's report, the trial court observed on the record that section 1170.1 provided for a consecutive term for an in-prison offense. Since this statute *requires* imposition of a consecutive term, defendant was not prejudiced by the court's erroneous reliance upon California Rules of Court, rule 425(a)(1) and (3).

---

[3]California Rules of Court, rule 425(a)(1) and (3).

We affirm the judgment.

Woolpert, Acting P. J., and Martin, J., concurred.