Filed 9/26/14  P. v. Sanchez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H038294 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. CC932247) |
| v. | |
| SARAGOZA SANTOS SANCHEZ, | |
| Defendant and Appellant. | |

Defendant Saragoza Santos Sanchez[1] appeals from a judgment following his conviction of numerous crimes that he was charged with committing in his role as a local commander for the Norteño criminal street gang.  We will affirm the judgment with one modification.

### PROCEDURAL BACKGROUND

On December 15, 2011, a jury convicted defendant of kidnapping for purposes of extortion (Pen. Code, § 209, subd. (a); count 1)),[2] second degree robbery (§§ 211, 212.5, subd. (c); count 2), assault with force likely to produce great bodily injury (§ 245, former subd. (a)(1); Stats. 2004, ch. 494, § 1, p. 4040; count 3), criminal threats (former § 422;

---

[1] Defendant spells his name Saragosa Santos Sanchez and uses Santos as "the name he goes by."

[2] All statutory references are to the Penal Code.

Stats. 1998, ch. 825, § 3, pp. 5161-5162; count 4), attempted first degree robbery in concert (§§ 211, 213, subd. (a)(1)(A), 664; count 5), first degree burglary (§§ 459, 460, subd. (a); count 6), simple kidnapping (§ 207, subd. (a); count 7), participation in a criminal street gang (§ 186.22, subd. (a); count 9), and possession of a firearm by a convicted felon (former § 12021, subd. (a)(1); Stats. 2008, ch. 599, § 4, West's Cal. Sess. Laws, vol. 3, p. 3423; count 10).  (Count eight had been dismissed.)  With respect to counts one through seven, the jury found true an allegation that he committed the offense for the benefit of, at the direction of, or in association with a criminal street gang, with the intent to promote, further, or assist in criminal conduct by gang members.  (§ 186.22, subd. (b).)

On December 19, 2011, after a trial to the court, the court found true allegations that defendant had two prior serious felony convictions (§ 667, subd. (a)), and five prior convictions under the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12), and had served two prior prison terms (§ 667.5, subd. (b)).  It sentenced him to an indeterminate prison term of 223 years to life, consecutive to a determinate prison term of 112 years.

## FACTS

Defendant was a regimental commander in the Norteño criminal street gang in the Santa Clara Valley.  Santa Clara County has at least six Norteño regiments.  His rank required that he oversee the drug sales of his gang subalterns.  The gang members would receive drugs on credit from various suppliers and settle their accounts from the proceeds of their sales.  They would also pay dues to the Norteño organization, either out of the sale proceeds or by any other means available to them, such as a legitimate job.

One drug seller, Steven Enriquez, also known as "Aware" or "Orlando," had received drugs on credit and fell behind in paying for them.  He had further transgressed by failing to collect amounts that another drug seller, Matthew Cintas, also known as "Taboo," owed to the gang.

2

Feeling that the gang's normally ruthless debt collection protocols were being inadequately enforced, defendant ordered his second-in-command, Justin Wallace, also known as "Trigger" or "Sapo" (Spanish for toad), to make an example of Enriquez by having him kidnapped and beaten. This punishment was to be meted out even if Enriquez paid his outstanding debt.

In an effort to locate and punish Enriquez, Wallace, Ruel Atwell (also known as "Ace" and "Rascal"), and other gang members broke into the house of Jennifer Jimenez, Enriquez's cousin's cousin, where they thought they would find him. Atwell had a gun; another gang member had a machete or sword. Jimenez and her toddler-aged son were home and two adult visitors were also on the premises, but Enriquez was not among them. Atwell rummaged through Jimenez's purse and stole money and other items from it. They forced one of the visitors, Ruben Flores, also known as "Huesos" (Spanish for bones), who knew Enriquez, to call Enriquez and tell him that he wanted to purchase methamphetamine from him at Jimenez's house. Enriquez said he would be there in 30 minutes but failed to arrive. He later called to say that he was at a nearby restaurant. Wallace, Atwell, and between one and three other gang members left and forced Flores to go with them in a van. They finally caught up with Enriquez in a parking lot across the street from the restaurant. The gang members forced him into the van. Enriquez said, according to Flores, "I got your money," but Wallace ignored this possible offer to settle the debt and punched Enriquez at length while cursing at him, and Atwell pistol-whipped him, the assaults causing the van's interior to become blood-splattered. Atwell took Enriquez's wallet and keys from his pockets. Atwell proposed killing Enriquez, although to Flores, who was a bystander to the events in the van, it seemed Enriquez was near death already. Though badly injured, Enriquez managed to open the van's side door and roll out onto a busy San Jose road in front of startled motorists. The car's occupants realized they could not retrieve him in these circumstances and drove off. Paramedics arrived and transported him to the hospital.

Wallace testified that defendant was disappointed to learn Enriquez had escaped but pleased to learn he had been severely beaten.

A police sergeant, testifying as an expert in gang behavior, opined that Norteños would not attack another Norteño without the regimental commander's approval and that the commander would order the punishment to make an example of a gang renegade. The local Norteño gang's written rules, which the sergeant testified were "as detailed as I've ever seen them," included rule number 19, which the sergeant read to the jury: "No soldado [soldier] is to ever take matters into his own hands. If you are ever disrespected, done wrong, etc., you simply report it to your crew boss. We will deal with it accordingly and retribution will fit the offense. Never is a soldado to lay hands on or spill the blood of another soldado." The sergeant explained that retribution "would be cleared through the regiment commander," namely, as we have described, defendant. The police recovered this document from defendant's residence. It is the type of document not normally made available to rank-and-file Norteños, because it is too incriminating if found by the authorities; the sergeant agreed with the prosecutor's question, "these types of documents are reserved for people higher up in the organization?"

## DISCUSSION

### I. Requirement that Accomplice Testimony be Corroborated

Much of the foregoing evidence was elicited from testimonial or extrajudicial statements made by Atwell and Wallace. Defendant claims that their statements about his orchestration of the raid on Jimenez's house and subsequent locating and beating of Enriquez were insufficiently corroborated under section 1111's accomplice-testimony corroboration requirement. He contends that his convictions on counts one through seven, which charged crimes connected to these events, must be reversed because they infringe on state law and a liberty interest he discerns to be conferred via the due process clause of the Fourteenth Amendment to the United States Constitution.

4

Section 1111 provides, in pertinent part: "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

"The statute defines an accomplice as 'one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given.' (§ 1111.) ' "To be so chargeable, the witness must be a principal under section 31. That section defines principals as '[a]ll persons concerned in the commission of a crime, whether . . . they directly commit the act constituting the offense, or aid and abet in its commission. . . .' (§ 31.) An aider and abettor is one who acts with both knowledge of the perpetrator's criminal purpose and the intent of encouraging or facilitating commission of the offense. Like a conspirator, an aider and abettor is guilty not only of the offense he intended to encourage or facilitate, but also of any reasonably foreseeable offense committed by the perpetrator he aids and abets." ' " (*People v. Sattiewhite* (2014) 59 Cal.4th 446, 472.) " ' "[T]he court should instruct the jury that a witness is an accomplice as a matter of law when the facts establishing the witness's status as an accomplice are ' " 'clear and undisputed.' " ' " [Citations.]' " (*Ibid.*)

Pursuant to CALCRIM No. 335, the trial court instructed the jury that "If the crimes charged in counts One through Seven were committed, then Justin Wallace and Ruel Atwell were accomplices to those crimes.

"You may not convict the defendant of any of the crimes charged in Counts One through Seven based on the statement or testimony of an accomplice alone. You may use the statement or testimony of an accomplice to convict the defendant only if:

"1. The accomplice's statement or testimony is supported by other evidence that you believe;

5

"2. That supporting evidence is independent of the accomplice's statement or testimony;

"AND

"3. That supporting evidence tends to connect the defendant to the commission of the crimes.

"Supporting evidence, however, may be slight. It does not need to be enough, by itself, to prove that the defendant is guilty of the charged crime, and it does not need to support every fact mentioned by the accomplice in the statement or about which the witness testified. On the other hand, it is not enough if the supporting evidence merely shows that a crime was committed or the circumstances of its commission. The supporting evidence must tend to connect the defendant to the commission of the crime.

"The evidence needed to support the statement or testimony of one accomplice cannot be provided by the statement or testimony of another accomplice." That is, Wallace's statements would not suffice to corroborate Atwell's, and vice-versa.

As noted, the trial court followed CALCRIM No. 335 in giving the foregoing instructional language to the jury. To be sure, "jury instructions, whether published or not, are not themselves the law . . . . At most, when they are accurate . . . they restate the law." (*People v. Morales* (2001) 25 Cal.4th 34, 48, fn. 7.) The foregoing instruction, however, accurately restates California law on this question. (*People v. Tuggles* (2009) 179 Cal.App.4th 339, 367.) Although jury instructions "should not be cited as *authority* for legal principles in appellate opinions" (*Morales*, *supra*, at p. 48, fn. 7, italics added), when they are accurate, their textual content will provide a useful *summary* of legal principles—a fine distinction, but that is what it means to restate the law.

In particular, the instruction's direction that supporting evidence need only be slight is accurate. " ' "Corroborating evidence may be slight, may be entirely circumstantial, and need not be sufficient to establish every element of the charged offense." [Citation.] The evidence is "sufficient if it tends to connect the defendant with

6

the crime in such a way as to satisfy the jury that the accomplice is telling the truth." ' " (*People v. Chism* (2014) 58 Cal.4th 1266, 1301.)

Defendant focuses on the prosecutor's closing argument and the purportedly unhelpful content of text messages to urge that there is insufficient evidence, outside Atwell's and Wallace's testimony, to satisfy the accomplice-statement-corroboration requirement. He neglects the evidence, found in the Norteño regiment's rule number 19, which was entered into evidence in written form and read to the jury by the police sergeant witness, that a rank-and-file gang member lacks authority to punish another one, and that an order to mete out punishment may come only from the "crew boss," a role that a jury could reasonably impute to defendant. This was at least slight evidence to satisfy the rule that slight evidence must corroborate accomplice testimony.

With regard to defendant's constitutional claim, *People v. Chism*, *supra*, 58 Cal.4th 1266, is dispositive. "[T]he record contains . . . evidence that corroborates [the] testimony and supports defendant's convictions." (*Id*. at p. 1301.) "Even if, as defendant asserts, section 1111 creates a 'liberty interest' under *Hicks v. Oklahoma* (1980) 447 U.S. 343, his federal constitutional right to due process were not violated based on [a claim, found to be meritless, of] uncorroborated testimony of an accomplice." (*Ibid.*)

## II. *Pleading and Proof of Gang Enhancement Allegation for Count Five*

Defendant contends that the gang enhancement appurtenant to count five, attempted first degree robbery in concert (§§211, 213, subd. (a)(1)(A), 664), was improperly imposed. We agree.

The second amended information pleaded, with regard to count five, that defendant was subject to a gang sentence enhancement under subdivision (b)(4) of section 186.22, which imposes a term of life imprisonment with a minimum term for "home invasion robbery." (*Id*., subd. (b)(4)(B).) The jury found true this enhancement allegation. Clearly, a home invasion took place, but equally clearly, count five alleged only an attempted robbery. The trial court took the view that in these circumstances the

7

provision could not apply to count five.  It decided to sentence defendant under the less onerous gang sentence enhancement provided for in subdivision (b)(1)(C) of section 186.22.  That provision imposes a 10-year sentence enhancement for the commission of one of the violent felonies listed in subdivision (c) of section 667.5.

On appeal, the parties agree that the gang enhancement set forth in subdivision (b)(1)(C) of section 186.22, cannot apply.  Attempted robbery is not one of the violent felonies listed in subdivision (c) of section 667.5, although a completed robbery is.  (§ 667.5, subd. (c)(9).)

The People argue that defendant may instead be sentenced under subdivision (b)(1)(B) of section 186.22, which applies to serious felonies.  Attempted robbery is a serious felony under subdivision (c) of section 1192.7.  (§ 1192.7, subd. (c)(19), (32).)  For his part, defendant argues that no enhancement may attach to count five, because section 1170.1, subdivision (e), requires the pleading and proving of an enhancement allegation, and because constitutional due process principles require he be given "fair notice of the charges to provide an opportunity to prepare a defense and to avoid unfair surprise at trial."  (*People v. Tardy* (2003) 112 Cal.App.4th 783, 786.)

"All enhancements shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact."  (Pen. Code, § 1170.1, subd. (e).)  "[I]n addition to the statutory requirements that enhancement provisions be pleaded and proven, a defendant has a cognizable due process right to fair notice of the specific sentence enhancement allegations that will be invoked to increase punishment for his crimes."  (*People v. Mancebo* (2002) 27 Cal.4th 735, 747.)

The proceedings here fell short of those requirements.  As defendant points out, "the prosecutor never alleged that appellant's criminal conduct fell within the meaning of section 186.22, subdivision (b)(1)(C), and thus the trial court could not resort to that statute to determine appellant's punishment as to count five after correctly determining that . . . section 186.22, subdivision (b)(4), was not applicable."

8

We see two possible bases not to grant defendant relief, but neither applies. First, "An accusatory pleading stating the charged offense provides the defendant not only with notice of the offense actually charged but also with notice of any necessarily included offenses." (*People v. Tardy*, *supra*, 112 Cal.App.4th at p. 786.) Assuming solely for purposes of argument that this rule applies to enhancements and that enhancements follow the general rules that apply to uncharged lesser included offenses,[3] subdivision (b)(4) of section 186.22 contains a component not necessarily found in subdivision (b)(1)(B) thereof, and that is that the underlying crime must be a home invasion robbery, a carjacking, the firing of a gun at certain structures or conveyances that contain people, certain shootings from a motor vehicle, extortion, or threats to victims and witnesses. Subdivision (b)(1)(B) of section 186.22 cannot be lesser to and included in subdivision (b)(4) thereof, because it is much broader: it applies to any serious felony, a long list of felony offenses. (See § 1192.7, subd. (c).) Nor do the contents of the second amended information satisfy the requirements of the accusatory-pleading test.

The other possibility is found in a case our own research has discovered, *People v. Riva* (2003) 112 Cal.App.4th 981 (*Riva*). In that case, the information alleged a 25-years-to-life sentencing enhancement under section 12022.53, subdivision (d), on counts that charged the defendant with voluntary manslaughter and assault, but not with respect to a third count that charged shooting at an occupied vehicle. The verdict forms, however, asked the jury to consider the enhancement allegation on all counts. The jury found all of the allegations true and the trial court imposed the enhancement on the third count. (*Id.* at pp. 1000-1001.)

---

[3] "An uncharged offense is included in a greater charged offense if *either* (1) the greater offense, as defined by statute, cannot be committed without also committing the lesser (the elements test), *or* (2) the language of the accusatory pleading encompasses all the elements of the lesser offense (the accusatory pleading test)." (*People v. Parson* (2008) 44 Cal.4th 332, 349.)

In upholding imposition of the enhancement, *Riva* decided that the procedure did not violate a statutory provision, former subdivision (j) of section 12022.53 (Stats. 2002, ch. 126, § 4, p. 695), which, in parallel to subdivision (e) of section 1170.1, required pleading and proof of the enhancement.[4] The court also found that there was no violation of section 1170.1, subdivision (e), the provision defendant relies on here. Finally, it declined to find an infringement of defendant's due process rights. (*Riva*, *supra*, 112 Cal.App.4th at pp. 1001-1003.)

The *Riva* court reasoned, "subdivision (j) [of section 12022.53] only requires [that] the facts necessary to sustain the enhancement be alleged in the information; it does not say where in the information those facts must be alleged or that they must be alleged in connection with a particular count in order to apply to that count." (*People v. Riva*, *supra*, 112 Cal.App.4th at p. 1001.) It reached the same conclusion regarding subdivision (e) of section 1170.1. (*Id*. at p. 1002.) "Had the Legislature intended an enhancement under section 12022.53 be specifically pled as to each count the prosecution sought to enhance, it knew how to say so clearly." (*Ibid*.) Also, failing to allege the enhancement on the third count did not interfere with the defendant's ability to contest the allegation, as he was on notice via the allegation as to the other two counts that he had to defend against it. (*Id*. at pp. 1002-1003.)

" '[T]here is no horizontal stare decisis in the California Court of Appeal.' " (*People v. Sarpas* (2014) 225 Cal.App.4th 1539, 1560.) Leaving aside the question whether *Riva* is correct on its own procedural facts, we will not apply its reasoning here. Defendant was ultimately charged with nine counts, numbered one through ten, with count eight dismissed. Counts one through seven were accompanied by allegations of

---

[4] Former subdivision (j) of section 186.22 provided in pertinent part: "For the penalties in this section to apply, the existence of any fact required under subdivision . . . (d) shall be alleged in the information or indictment and either admitted by the defendant in open court or found to be true by the trier of fact."

four different paragraphs or subparagraphs of subdivision (b) of section 186.22: (b)(1)(B), (b)(1)(C), (b)(4), and (b)(5). To say that defendant was afforded fair notice that he might eventually wind up with a subparagraph (b)(1)(B) enhancement because it was alleged in certain counts among these nine charged counts strikes us as requiring defense counsel to engage in a potential planning exercise that might exhaust a Rubik's Cube devotee, given all of the permutations and combinations of various enhancements under subdivision (b) that could wind up being imposed on counts on which they were not originally alleged. We find *Riva* inapposite in these circumstances.

The enhancement must therefore be stricken. (See *People v. Holdsworth* (1997) 199 Cal.App.3d 253, 262; *People v. Jordan* (1984) 155 Cal.App.3d 769, 787.)

### III.    *Intent or Intents in Committing Robbery and Aggravated Assault*

Defendant claims that the trial court erred under section 654 in failing to stay the sentence on the aggravated assault conviction (§ 245, subd. (a)(1)). He asserts that the intent lying behind the assault was inseparable from the intent to rob Enriquez (§§ 211, 212.5, subd. (c)). He also claims that the court's action violated his right to due process under the Fourteenth Amendment to the United States Constitution.

We disagree. The trial court could reasonably find that beating Enriquez and robbing him were separate acts with separate intents.

Section 654, subdivision (a), provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

"Section 654 prohibits multiple punishment for a single criminal act and for two crimes arising from a single indivisible course of conduct in which the defendant had only one criminal intent or objective. [Citation.] Thus: [¶] 'If all of the crimes were merely incidental to, or were the means of accomplishing or facilitating one objective, a

11

defendant may be punished only once. [Citation.] If, however, a defendant had several independent criminal objectives, he may be punished for each crime committed in pursuit of each objective, even though the crimes shared common acts or were parts of an otherwise indivisible course of conduct.' [Citation.]" (*People v. Conners* (2008) 168 Cal.App.4th 443, 458, fn. omitted.)

"We review under the substantial-evidence standard the court's factual finding, implicit or explicit, of whether there was a single criminal act or a course of conduct with a single criminal objective." (*People v. Moseley* (2008) 164 Cal.App.4th 1598, 1603.)

There was substantial evidence for the trial court's implicit finding that defendant harbored separate intents. Defendant wanted Enriquez to be beaten to set an example for others who might go astray and fall afoul of the gang's strict rules. He also wanted to recover the money Enriquez owed.

The reasoning of *People v. Hairston* (2009) 174 Cal.App.4th 231, applies here: " 'If . . . the defendant had multiple or simultaneous objectives, independent of and not merely incidental to each other, the defendant may be punished for each violation committed in pursuit of each objective even though the violations share common acts or were parts of an otherwise indivisible course of conduct.' " (*Id*. at p. 240.) As the People observe, the beating of Enriquez went beyond what was required to extract his belongings from him. There was substantial evidence for the trial court's implicit finding that the beating was intended to accomplish something different from the robbery. Defendant's claim is without merit.

As for defendant's due process claim, our rejection of his state law claim yields the answer. "[N]o separate constitutional discussion is required or provided where rejection of a claim that the trial court erred on the issue presented to that court" (*People v. Contreras* (2013) 58 Cal.4th 123, 139, fn. 17)—or, as here, when a claim was not presented to the trial court but is otherwise preserved for review (*People v. Neal* (1993)

12

19 Cal.App.4th 1114, 1120)—"necessarily leads to rejection of any constitutional theory or 'gloss' raised for the first time here." (*Contreras*, *supra*, at p. 139, fn. 17.)

## DISPOSITION

The judgment is modified in the following respect:  the Penal Code section 186.22, subdivision (b)(1)(B) sentencing enhancement on count five is stricken. The trial court is directed to resentence defendant accordingly.  The judgment is affirmed in all other respects.

_____

RUSHING, P.J.

WE CONCUR:

_____

PREMO, J.

_____

ELIA, J.