[No. D006055. Fourth Dist., Div. One. July 6, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
WATSON WHITE, Defendant and Appellant.

**COUNSEL**

George L. Schraer, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Peter Quon, Jr., and Holly D. Wilkens, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WIENER, J.**—A jury convicted Watson White of prison escape by force or violence (Pen. Code,[1] § 4532, subd. (b)). The court sentenced White to the upper term of six years in prison and enhanced the sentence one additional year for each of four prior felony convictions pursuant to section 667.5(b) for a total prison term of ten years. White appeals, contending the term "force or violence" should be construed as applying only to force or violence exerted against a person, not property, and the sentence enhancements were improperly imposed because his previous sentence had already been enhanced for the same prior convictions. He also asserts there is insufficient evidence to sustain the court's imposition of enhancements for prior felony convictions in Missouri. Although we reject White's first two arguments, we conclude there is merit to his claim the section 667.5(b) enhancement was improperly imposed for the 1974 Missouri conviction. We therefore modify the sentence by reducing it from 10 years to 9 years and as so modified affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

White was in custody at the South Bay Detention Facility pending appeal of the sentence imposed on his convictions for first degree murder, robbery and kidnapping[2] in which he had been sentenced to 44 years and 4 months. White was transferred to a cell occupied by another prisoner. After dinner White placed a wet piece of toilet paper over the intercom in the cell and began making a hole in the ceiling with a mop handle. White told his cellmate, "You have nothing to lose; I have 46 to life; you ain't got nothing to worry about. I am riding my own beef. I have got everything to gain." White's cellmate wanted to alert deputies by pressing a buzzer in the cell, but White told him not to or he would "have to do something" to him. The cellmate said he wasn't afraid of White, but didn't want to get involved in his escape attempt. The cellmate sat down on the toilet near the door while White worked on the hole in the ceiling for about an hour. White climbed into the hole head first, up to about waist level.

At around 7 p.m. a deputy sheriff made a security check of the cell and saw the hole in the ceiling. White was standing under the hole with his hands in the air. He had white powder on his clothing and in his hair, and cuts and scratches on his hand, arms and back. Above the ceiling of the cell

---

[1] All statutory references are to the Penal Code unless otherwise specified. When referring to statutory subparts we omit repetition of the word "subdivision."

[2] This is White's fourth appeal before this court. In the most recent appeal this court upheld the imposition of two enhancements pursuant to section 667.5 based on two prior Missouri prison terms. (See *People* v. *White* (1987) 196 Cal.App.3d 967 [242 Cal.Rptr. 256].)

were found an air duct and crawl space large enough for a person to enter. White did $1,950 worth of damage to the cell.

DISCUSSION

I

White argues the term "force or violence" in section 4532(b) is ambiguous and should be construed in his favor by modifying his conviction to one for nonforcible escape.

Section 4532(b) provides: "Every prisoner . . . convicted of a felony who is confined in any county or city jail . . . who escapes or attempts to escape from such county or city jail, . . . is guilty of a felony and, if such escape or attempt to escape was not by force or violence, is punishable by imprisonment in the state prison for 16 months, or two or three years to be served consecutively, or in the county jail not exceeding one year; provided, that if such escape or attempt to escape is by force or violence, such person is guilty of a felony and is punishable by imprisonment in the state prison for a full term of two, four, or six years to be consecutive to any other term of imprisonment, commencing from the time the person would otherwise have been released from imprisonment and the term shall not be subject to reduction pursuant to subdivision (a) of Section 1170.1, . . ."

There is no question but that White tried to escape. The issue is whether he used force or violence within the meaning of the statute. The significance is more than semantic. At the aggravated level a forcible escape results in a prison sentence three years longer than the sentence authorized for nonforcible escape.

White says that the phrase "force or violence" is ambiguous because it is susceptible of two reasonable interpretations. He explains that the usual connotation of "force or violence" in the law refers to only those acts committed against people and not acts against property. In support of his theory he notes the words "force and/or violence" are used elsewhere in the Penal Code to describe crimes committed against people, but not against property. (See e.g., kidnapping, § 207; robbery, § 211, assault, § 240, battery, § 242, rape, § 261(2); sodomy, § 286(c); and oral copulation, § 288a(c).) White states that even though the words "force or violence" themselves are clear they become ambiguous under section 4532 in light of the meaning attributed to those words in other Penal Code provisions where the statute itself does not expressly provide that force or violence against property is included.

White's argument has superficial appeal. Our initial response was that it borders on the absurd to think a defendant uses force to escape when he merely opens an unlocked window or an unlocked but closed jail cell door. Intuitively one is inclined to classify such conduct as nonforcible since to hold otherwise subjects the escaping felon described above, who places no one in jeopardy, to the same punishment as the escaping felon who creates substantial risk of harm by attacking fellow inmates or prison guards. But our decisional responsibility requires more than an intuitive response. Nor are we permitted to redraw the lines differentiating between forcible and nonforcible escapes when the Legislature has drawn them in a clear and unambiguous manner.

Even if a strong argument can be made that the "force and violence" category is over-inclusive and the "nonforcible" category under-inclusive, we are powerless to act when the Legislature's classification has a rational purpose. For example, nonforcible escapees include not only those who walk through open jail doors, but those who fail to return to jail after having been released for work furlough. It is certainly within the legislative prerogative to conclude that different punishments are appropriate for the felon who bolts out the open jail door and the felon who in a deliberate and premeditated fashion destroys property to secure his or her freedom. The Legislature may have also decided it was simply too difficult to distinguish between types of force an escaping felon might use against property. The Legislature's solution to this line drawing problem was to create a relatively large, almost all-inclusive class, and to include those whose escapes are accomplished with a minimum amount of force against property.

Our interpretation of the legislative scheme is consistent with both California and out of state precedent.

In *People* v. *Bravot* (1986) 183 Cal.App.3d 93 [227 Cal.Rptr. 810], the escape occurred when the defendant was in the custody of a deputy sheriff at the county medical center after the defendant had been booked at the county jail for assaulting two police officers. "[W]hile [the deputy sheriff] was using the telephone, appellant, who was stark naked, ran by him . . . through a glass window . . . ." (*Id.* at pp. 95-96.) The appellate court responded to the trial court's concern that such an escape was not forcible by stating " '[T]he words "force" and "violence" are synonymous and mean any wrongful application of physical force *against property* or the person of another.' (CALJIC No. 7.31 (4th ed. 1979) italics added.) Section 4532, subdivision (b), speaks in general terms of 'force or violence' and does not in any way indicate that it must be directed to a person." (*Id.* at p. 97.)

In *People* v. *Lozano* (1987) 192 Cal.App.3d 618 [237 Cal.Rptr. 612], an escaping prisoner hit an officer with a handcuff and smashed his radio. The

court found the language of section 4532 "proscribes the use of any and all force or violence" (*id*. at p. 627) and the defendant's breaking of the radio was "sufficient to support a finding [of the] use of force or violence against property" (*id*. at p. 627, fn. 8).

The Kansas Supreme Court held similarly in *State* v. *McGrew* (1963) 190 Kan. 834, [96 A.L.R.2d 517, 378 P.2d 94]. In *McGrew* the court reviewed the escape of three trustees who had removed a window screen, opened the window, jumped out and walked away. The court held the removal of the screen and the opening of the window constituted an act of force or violence since " 'something [had to] be done *to open a way through confined walls or other obstruction to a free entrance or exit.*' " (*State* v. *McGrew, supra,* 378 P.2d at p. 95, quoting *State* v. *Clark* (1926) 121 Kan. 817 [250 P. 300, 301, 50 A.L.R. 986].) The Supreme Court of Washington reached a similar conclusion in *State* v. *Hatfield* (1911) 66 Wash. 9 [118 P. 893, 895]. In that case the Supreme Court held the attempted escape of two prisoners was accomplished through the use of force because the escaping felons possessed saws, an alcohol lamp and a blowpipe, and because they sawed a bolt in their cell. (See generally Annot., Escape or Prison Breach as Affected by Means Employed (1964) 96 A.L.R.2d 520.)

Because of the unambiguous language of section 4532(b) and established precedent interpreting that provision we hold White was properly convicted of forcible escape.

## II

■ Relying on *People* v. *Tassell* (1984) 36 Cal.3d 77 [201 Cal.Rptr. 567, 679 P.2d 1], White claims the court made an additional sentencing error in adding a total of four years—one year for each prior conviction—to his sentence for the attempted escape when the enhancements for these convictions had already been imposed in the case for which he was in custody.

The California Supreme Court in *Tassell* reversed a trial court sentence which had increased an unstayed prison term of sixteen years by an additional twelve years—six years on two separate counts for two prior convictions under sections 667.5 and 667.6, holding that the enhancements for the prior convictions did not attach to particular counts, but are added just once as the final step in computing the total sentence. (*Tassell* at pp. 90-91.) The court explained: "Section 1170.1 refers to two kinds of enhancements: (1) those which go to the nature of the offender; and (2) those which go to the nature of the offense. Enhancements for prior convictions—authorized by sections 667.5, 667.6 and 12022.1—are of the first sort. The second kind of enhancements—those which arise from the circumstances of the crime—

are typified by sections 12022.5 and 12022.7: was a firearm used or was great bodily injury inflicted? Enhancements of the second kind enhance the several counts; those of the first kind, by contrast, have nothing to do with particular counts but, *since they are related to the offender, are added only once as a step in arriving at the aggregate sentence.* [¶] Section 1170.1, subdivision (a) starts out by stating the basic rule that when a person is convicted of two or more felonies, the total sentence consists of (1) the principal term, (2) the subordinate term, and (3) any enhancements for prior convictions. In so doing, it makes it very clear that enhancements for prior convictions do not attach to particular counts but instead are added just once as the final step in computing the total sentence." (*Tassell, supra,* at p. 90, fn. omitted; italics added.)[3]

We assume the phrase "aggregate sentence" was used in *Tassell* to emphasize that the sentence in that case had been computed and was imposed under section 1170.1(a). "Aggregate" is a sentencing word of art meaning the total term of imprisonment computed by adding the principal term, the subordinate term, and any additional term imposed under sections 667.5, 667.6 or 12022.1.

Thus, here the determinative question is whether White's sentence for the escape became a part of the earlier "aggregate term of imprisonment" imposed on his convictions of first degree murder, robbery and kidnapping which also included the total of four years imposed for the four priors. If the sentence in this case is part of the aggregate term as that term is defined under section 1170.1(a), *Tassell* is dispositive and dual enhancements for the prior convictions may not be imposed. If, however, White's sentence for the escape is a separate term on a new felony offense, i.e., a sentence which is not merged within the earlier aggregate term, one year for each prior separate prison term served for earlier felony convictions is not precluded under *Tassell* and is statutorily required. As we shall explain we conclude White's sentence for escape was imposed under section 1170.1(c)[4] and

---

[3] Section 1170.1(a) provides in part: "Except as provided in subdivision (c) and subject to section 654, when any person is convicted of two or more felonies, whether in the same proceeding or court, or in different proceedings or courts, whether by judgment rendered by the same or by a different court, and a consecutive term of imprisonment is imposed under sections 669 and 1170, the aggregate term of imprisonment for all these convictions shall be the sum of the principal term, the subordinate term and any additional term imposed pursuant to Section[s] 667.5, 667.6, or 12022.1, . . . ."

[4] Section 1170.1(c) provides: "In the case of any person convicted of one or more felonies committed while the person is confined in a state prison, or is subject to reimprisonment for escape from such custody and the law either requires the terms to be served consecutively or the court imposes consecutive terms, the term of imprisonment for all the convictions which the person is required to serve consecutively shall commence from the time such person would otherwise have been released from prison. If the new offenses are consecutive with each other, *the principal and subordinate terms shall be calculated as provided in subdivision*

accordingly is a distinct and separate sentence from that imposed under section 1170.1(a), thereby permitting the enhancements for the prior convictions.

The determinate sentencing law treats in-prison offenses differently than out-of-prison offenses. (*People* v. *McCart* (1982) 32 Cal.3d 338, 340 [185 Cal.Rptr. 284, 649 P.2d 926].) The difference is simple and understandable. The Legislature wanted in-prison crimes to be punished more severely than crimes committed "on the outside." (*Ibid.*) Thus, as a general rule sentences for out-of-prison offenses are calculated under subdivision (a) of section 1170.1—the greatest term of imprisonment is the principal term and the consecutive sentences are subordinate terms, served at one-third of the middle term. *People* v. *Bozeman* (1984) 152 Cal.App.3d 504 [199 Cal.Rptr. 343] is a classic illustration of how a court may modify a lawful sentence previously imposed under the mandate of section 1170.1(a) where the defendant is convicted of two or more out-of-prison felonies. In *Bozeman* the defendant was convicted in case 1 of second degree burglary and sentenced to a three-year upper term plus a one-year enhancement for a prior prison term for a total sentence of four years. In case 2 the defendant pleaded guilty to three counts of perjury and one count of second degree burglary and was sentenced to a total of four years and eight months. Defense counsel negotiated a six-year and eight-month cap on the combined sentence for both cases under the plea bargain in case 2. On appeal the court held the court had properly applied the principal term/subordinate term scheme of sentencing under section 1170.1(a) in modifying the earlier sentence. The court correctly selected the perjury sentence imposed in case 2 as the principal term. The court then decided the sentence for second degree burglary in case 1 should be served consecutively to the perjury sentence. The court was then required to impose a subordinate one-third middle term for the burglary. (*Id.* at p. 507; see also *In re Clawson* (1981) 122 Cal.App.3d 222 [175 Cal.Rptr. 732].)

Section 1170.1(c) applies to felonies committed when the defendant is confined in a state prison. The statutory scheme makes clear that such felonies, i.e., those felonies committed in prison, are exempt from the general sentencing scheme. (*In re Sims* (1981) 117 Cal.App.3d 309, 313 [172 Cal.Rptr. 608].) A sentence under subdivision (c) is longer than a sentence imposed under subdivision (a) because the in-prison offenses are fully consecutive to the sentence for the offense for which the defendant was in prison. Using sentencing jargon "the in-prison offense is treated as a new principal term rather than as a subordinate term to the out-of-prison

---

(a), except that the total of subordinate terms may exceed five years. The provisions of this subdivision shall be applicable in cases of convictions of more than one offense in different proceedings, and convictions of more than one offense in the same or different proceedings."

offense." (*People* v. *Holdsworth* (1988) 199 Cal.App.3d 253, 256 [244 Cal.Rptr. 782]; see *People* v. *McCart, supra,* 32 Cal.3d 338, 344; *In re Sims, supra,* at p. 314.)

Viewed schematically, the term for an in-prison offense does not become part of the aggregate prison term imposed for those offenses which were committed "on the outside." Instead the defendant is imprisoned for a total term consisting of the sum of his aggregate sentence computed under section 1170.1(a) plus the new aggregate term imposed under section 1170.1(c). (*People* v. *McCart, supra,* 32 Cal.3d at p. 340.) The latter term starts to run at the end of the prison term imposed for the defendants original "outside" offense. (*Ibid.*) Under a "box theory" the outside offense and attending enhancements are computed under section 1170.1(a) within the confines of one box. Under section 1170.1(c) the in-prison offenses and enhancements are computed according to section 1170.1(a) in a separate box. The total term is computed by adding the totals of the two boxes together. (See *People* v. *Reeder* (1984) 152 Cal.App.3d 900, 924 [200 Cal.Rptr. 479] (computation of sentences for sex offenses under §§ 1170.1 and 667.6).)

Here because White was sentenced to a new prison term for in-prison offenses, the addition of the enhancements for his prior convictions was proper. ■ Implicit in our decision is our rejection of White's contention that he was not "confined in state prison" when he attempted to escape. There is no dispute that White had been sentenced to prison, delivered and incarcerated there, and temporarily returned to county jail for proceedings associated with an earlier appeal. In such circumstances he was confined in state prison within the meaning of section 1170.1(c). (*People* v. *Lamont* (1986) 177 Cal.App.3d 577 [223 Cal.Rptr. 52]; *People* v. *Nick* (1985) 164 Cal.App.3d 141 [210 Cal.Rptr. 137]; compare *People* v. *Holdsworth, supra,* 199 Cal.App.3d 253.)

While we recognize the harshness of dual enhancements we believe our conclusion is consistent with the legislative intent to provide additional punishment for the recidivist, regardless of whether he commits a new felony inside prison or on the outside. Society is at a greater risk from a hardened criminal and the protection of society warrants harsher punishment for the habitual offender. (*People* v. *Jacobs* (1984) 157 Cal.App.3d 797 at p. 802 [204 Cal.Rptr. 234].) It would indeed be an unfortunate anomaly if the defendant who escaped one day before his sentence was completed could avoid the application of section 667.5(b) because he was serving a prison term while his confederate who waited until his lawful release two days later before committing a new felony was subject to increased punishment for the prior convictions. To treat the in-prison recidivist more leniently than the out-of-prison recidivist is contrary to the legislative pur-

pose underlying increased punishment for the habitual offender. (*See People v. Cardenas* (1987) 192 Cal.App.3d 51, 60 [237 Cal.Rptr. 249].)

### III

The question remains in this case whether there is sufficient evidence to support the imposition of two 1-year enhancements pursuant to section 667.5 based on White's 1971 and 1974 Missouri convictions for burglary and possession of a controlled substance. At oral argument the Attorney General conceded that the prosecution failed to prove White actually served one year or more in state prison as a result of his 1974 Missouri conviction for possession of a controlled substance. However, evidence was sufficient to support imposition of an enhancement based on the 1971 conviction, White having admitted in documents before the trial court that he served the two-year sentence. We conclude the prosecution failed to sustain its burden as to the 1974 Missouri conviction. Accordingly, we modify the sentence by striking one 1-year enhancement, for a total prison term of nine years, and affirm the judgment as so modified.

### DISPOSITION

Judgment affirmed as modified.

Kremer, P. J., and Work, J., concurred.

A petition for a rehearing was denied July 25, 1988, and appellant's petition for review by the Supreme Court was denied October 13, 1988.