Filed 12/3/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B251272 |
| Plaintiff and Respondent, | (Super. Ct. No. 1426140) |
| | (Santa Barbara County) |
| v. | |
| STEVEN MARK KUNES, | |
| Defendant and Appellant. | |

The walls of one's home are no less confining than the walls of a prison when one is on home detention. While on home detention, appellant Steven Mark Kunes cut his global positioning system (GPS) electronic monitoring device, mailed it to the sheriff, and flew to Pennsylvania. We conclude, among other things, his escape was by force, a violation of Penal Code, section 4532, subdivision (b)(2).[1]

Kunes appeals a judgment after the trial court issued an order denying his motion to withdraw his plea of no contest to one count of section 4532, subdivision (b)(2).

Kunes contends he did not escape by force, and his trial counsel was ineffective because he advised him to accept a plea agreement and did not inform him that he had a colorable necessity defense. We affirm.

---

[1] All statutory references are to the Penal Code.

FACTUAL AND PROCEDURAL BACKGROUND

Kunes's lengthy criminal history consists mainly of property crimes. He has 15 prior felony convictions, including forgery, grand theft, and identity theft. He has suffered four prior prison terms, and he previously absconded from parole.

In July 2012, Kunes was serving a four-year prison sentence in county jail pursuant to section 1170, subdivision (h)(2).[2] The sheriff released Kunes to complete his term in a home detention program pursuant to section 1203.016.[3] The conditions of home detention required Kunes to wear a GPS device around his ankle and to stay within the premises of New House, a sober living facility, at all times except on Wednesdays from 10:00 a.m. to 2:30 p.m., during which time Kunes could perform necessary tasks within a defined geographical area.

On Wednesday, August 22, 2012, at 2:31 p.m., Kunes left the defined geographical area, setting off an alert at the sheriff's department. He used scissors to remove his GPS device, and at 3:58 p.m., he mailed it to the sheriff's department from a Federal Express store. Kunes stated in a declaration that he flew to Pennsylvania where he stayed with his parents for about six months before sheriff's deputies contacted his father by telephone. Kunes was arrested in Santa Barbara County about a week later, drinking a martini in a Carpinteria restaurant.

---

[2] Section 1170, subdivision (h)(2) provides that felonies shall be punishable by imprisonment in county jail for the term described in the underlying offense, unless the defendant has a current or prior conviction for a serious or violent felony, is a sex offender, or has suffered an aggravated white collar crime enhancement.

[3] Section 1203.016, subdivision (a) authorizes the board of supervisors of any county to authorize a correctional administrator, such as the sheriff, to place inmates in a home detention program in lieu of confinement in the county jail. As a condition of participation, the inmate must agree to terms that include: "(1) The participant shall remain within the interior premises of his or her residence during the hours designated by the correctional administrator. [¶] . . . (3) The participant shall agree to the use of electronic monitoring, which may include global positioning system devices or other supervising devices for the purpose of helping to verify his or her compliance with the rules and regulations of the home detention program. . . ." (*Id.*, subd. (b)(1), (3).)

A first amended felony complaint charged Kunes with one count of simple escape (§ 4532, subd. (b)(1)) and one count of escape by force or violence (*id.*, subd. (b)(2)). It also alleged that he served four prior prison terms within the meaning of section 667.5, subdivision (b). The simple escape charge carried a maximum term of three years in state prison, while the forcible escape charge carried a maximum term of six years. (§ 4532, subds. (b)(1), (2).) The four prior prison terms each carried an additional one-year term. (§ 667.5, subd. (b).) The prosecutor advised Kunes that he faced a possible new felony charge because he used a check with insufficient funds at the sober living facility.

At his preliminary hearing, Kunes pled no contest to the forcible escape charge in exchange for: a midterm sentence of four years in state prison; dismissal of the simple escape charge; dismissal of the prior prison term allegations; and a promise that the prosecution will not file a new felony charge for an insufficient funds check if within 90 days he pays the amount owed to the sober living facility.

On his plea waiver form, Kunes wrote: "I committed the crime of escape by force when, while participating in electronic monitoring/home detention in lieu of custody to serve my prison sentence, I cut off my electronic monitoring device by force and left to the East Coast of the United States knowing that I was committing an escape in violation of [section] 4532."

After the plea and before sentencing, Kunes's trial counsel declared a conflict of interest. The trial court appointed substitute counsel to represent Kunes.

Kunes's new attorney moved to withdraw Kunes's plea pursuant to section 1018 on the grounds that Kunes was factually innocent of forcible escape and his prior attorney rendered ineffective assistance. Kunes filed an affidavit in which he declared that he flew to Pennsylvania out of necessity to take care of his elderly parents, both of whom had cancer. He said he first asked his supervising sheriff's deputy for permission, but the deputy refused. Kunes declared that during the plea negotiations his attorney falsely assured him the prosecutor knew of these circumstances, but later the prosecutor

told Kunes he "didn't know that." Kunes declared that his attorney never advised him of a possible "necessity defense." His attorney told him that the offer of a four-year term was a good deal because the judge was likely to give him 10 years in state prison, consisting of the high term for the forcible escape charge and four prior prison terms. Kunes declared that if he had known he had a possible defense to the escape charge and that the forcible escape charge was actually "absurd," he would not have accepted the offer.

In response, the prosecutor filed an affidavit, in which he stated that he knew that Kunes claimed he escaped in order to care for his parents. The prosecutor submitted transcripts of recorded jailhouse telephone conversations in which Kunes gave his girlfriend other reasons for his escape, including that he "just didn't want to be here anymore."

The trial court denied Kunes's motion. It found there was no clear and convincing evidence "that he wasn't told about potential defenses or that they would in fact even apply." In weighing the credibility of Kunes's affidavit, the trial court considered Kunes's history of theft-related crimes. The court recalled that at the time of the plea there was a discussion that the forcible escape charge "may or may not have some validity." It pointed out, "There are dozens of cases every day in this courthouse where people plead to a charge which may or may not be proveable." It noted that Kunes was "aware of the potential downside should he be convicted of all the charges and all the prison priors be found to be true, he was looking at 10-plus years. The offer going into this was six years, they ended up compromising at four years." At the sentencing hearing, Kunes orally renewed his motion to withdraw his plea, against the advice of his attorney. The trial court denied the motion.

## DISCUSSION

Kunes waived his right to assert he is factually innocent of forcible escape when he signed a "Waiver of Constitutional Rights and Plea" form in which he agreed there was a factual basis for the plea and acknowledged, "I waive and give up my right

4

to appeal." An order denying a motion to withdraw a guilty plea may be reviewed on an appeal from the judgment, but "the merits of the issue of guilt or innocence are not reviewable." (*People v. Ribero* (1971) 4 Cal. 3d 55, 63.) We will nevertheless review Kunes's claims of "constitutional, jurisdictional, or other grounds going to the legality of the proceedings" because he obtained a certificate of probable cause (§ 1237.5, subd. (a); *Ribero*, at p. 63), unlike the defendant in *People v. Panizzon* (1996) 13 Cal.4th 68, 78, upon which the People rely for their contention that we should dismiss the appeal. Kunes's cognizable claims are "ineffective waiver of constitutional rights . . . , ineffective assistance of counsel . . . , or other abuse of discretion in denying a motion to withdraw a guilty plea." (*Ribero*, at p. 63, citations omitted.)

We review a decision to deny a motion to withdraw a guilty plea for clear abuse of discretion. (*People v. Fairbank*, *supra*, 16 Cal.4th 1223, 1254.) A defendant who moves to withdraw his plea must demonstrate good cause by clear and convincing evidence. (*People v. Breslin* (2012) 205 Cal.App.4th 1409, 1415-1416.) He must show the trial court that "he or she was operating under mistake, ignorance, or any other factor overcoming the exercise of his or her free judgment, including inadvertence, fraud, or duress." (*Id.* at p. 1416.) He also must show that he would not have accepted the plea bargain had it not been for the mistake. (*Ibid.*) We must adopt the trial court's factual findings if substantial evidence supports them. (*Fairbank*, at p. 1254.)

Substantial evidence supports the trial court's implied finding that Kunes was not operating under any mistake, ignorance, or other factor that overcame his exercise of free judgment when he changed his plea. The defenses of which he claims ignorance were not viable.

Kunes contends he was ignorant of a necessity defense. But the record demonstrates that Kunes, his attorney, and the prosecutor were aware of the facts upon which Kunes now relies for that defense and the facts do not support it. The trial court and the prosecutor discredited Kunes's claim that he escaped to Pennsylvania because his parents needed him to care for them. But even if it were true, it would not support a

5

necessity defense.  The defendant must prove that he received a specific threat of death, forcible sexual attack, or substantial bodily injury in the immediate future and that he immediately reported this threat to the proper authorities when he had attained a position of safety from the immediate threat.  (*People v. Lovercamp* (1974) 43 Cal.App.3d 823, 831–832; CALCRIM No. 2764.)[4]  If, in fact, Kunes visited his ailing parents in Pennsylvania and then returned to Santa Barbara County, he did not report to the authorities.

Kunes does not demonstrate ineffective assistance of counsel because he does not show that his counsel's performance was deficient or prejudicial.  (*Strickland v. Washington* (1984) 466 U.S. 668,700.)  Kunes's attorney made a reasonable tactical decision to recommend the negotiated four-year term instead of challenging the legality of the forcible escape charge.  Whether forcible removal of a GPS device constitutes escape "by force" within the meaning of section 4532, subdivision (b)(2) is a question of first impression, but not hard to answer.  It does.  The statute specifically proscribes

---

[4] CALCRIM No. 2764 provides:
"If you conclude that the defendant (escaped/[or] attempted to escape), that conduct was not illegal if the defendant can prove the defense of necessity. In order to establish this defense, the defendant must prove that:
"1.  The defendant was faced with a specific threat of (death[,]/ [or] forcible sexual attack[,]/[or] substantial bodily injury) in the immediate future;
"2.  (There was no time for the defendant to make a complaint to the authorities/[or] (There/there) was a history of complaints that were not acted on, so that a reasonable person would conclude that any additional complaints would be ineffective);
"3.  There was no time or opportunity to seek help from the courts;
"4.  The defendant did not use force or violence against prison personnel or other people in the escape [other than the person who was the source of the threatened harm to the defendant];
"AND
"5.  The defendant immediately reported to the proper authorities when (he/she) had attained a position of safety from the immediate threat.
"The defendant has the burden of proving this defense by a preponderance of the evidence. This is a different standard of proof from proof beyond a reasonable doubt. To meet the burden of proof by a preponderance of the evidence, the defendant must prove that it is more likely than not that each of the five listed items is true."

6

escape from the place of confinement in a home detention electronic monitoring program pursuant to section 1203.016. It increases the penalty when escape from the home detention monitoring program is by force. Forcible removal of the GPS device is quintessential forcible escape from a home detection monitoring program.

Kunes argues that the force he used was insufficient because it did not endanger life, but that is not an element of the offense. Forcible escape is "not necessarily or inherently dangerous to human life." (*People v. Lozano* (1987) 192 Cal.App.3d 618, 632.) The "force" may be any wrongful use of force against property. (CALCRIM No. 2761; see *Lozano*, at p. 627.) Breaking an officer's radio to prevent a call for assistance is "sufficient to support a finding [of] the use of force or violence against property." (*Lozano*, p. 627, fn. 8.) Making a hole in a ceiling constitutes "force or violence" within the meaning of section 4532, subdivision (2). (*People v. White* (1988) 202 Cal.App.3d 862, 865.) "The Legislature . . . create[d] a relatively large, almost all-inclusive class, and . . . include[d] those whose escapes are accomplished with a minimum amount of force against property." (*Id.* at p. 866.) Kunes acknowledges that he cut off the GPS device with scissors to facilitate his escape to Pennsylvania. This was a violation of his home detention. Had Kunes been confined in prison and destroyed a security camera in the prison yard to avoid detection of an escape, the result would be the same. The facts here are sufficient to support a charge of forcible escape.

Even if Kunes could have prevailed on a motion to dismiss the forcible escape charge, the probable outcome would not have been more favorable. Kunes and his counsel knew that if the forcible escape charge were dismissed, Kunes would still face a minimum term of more than five years. Kunes acknowledges that he committed simple escape, which carries a 16-month, two- or three-year term. (§ 4532, subd. (b)(1).) Combined with his prior prison terms, the minimum term would exceed five years. And Kunes was a strong candidate for the maximum term because of his prior criminal history and his brazen decision to mail the GPS device back to the sheriff's

department.  Moreover, without the plea agreement, Kunes faced a new felony charge for using an insufficient funds check.  Kunes received effective assistance of counsel and the trial court did not abuse its discretion when it denied his motion to withdraw the plea.

## DISPOSITION

The judgment is affirmed.

CERTIFIED FOR PUBLICATION.


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.

8

Clifford R. Anderson III, Judge

Superior Court County of Santa Barbara

_____

Richard C. Gilman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell, Supervising Deputy Attorney General, Peggy Z. Huang, Deputy Attorney General, for Plaintiff and Respondent.