Filed 10/18/21  P. v. Swope CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ARTHUR RAY SWOPE,<br><br>    Defendant and Appellant. | F078006<br><br>(Super. Ct. No. BF164712A)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Michael G. Bush and John D. Oglesby, Judges.

Ross Thomas, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Ward A. Campbell, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury found Arthur Ray Swope (defendant) guilty of attempting to escape from jail by use of force.  Defendant claims the trial court erred by failing to instruct jurors on the requirement of unanimity as to the factual basis for the conviction.  He makes a

separate request for review of a discovery ruling made pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*). Defendant has also filed a motion for the discharge and replacement of his appointed counsel on appeal, which is denied for reasons set forth herein.

We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 30, 2016, defendant was sentenced to a lengthy prison term in Kern Superior Court case No. BF159035A. When the proceedings concluded, defendant was taken from the courtroom to the central receiving facility (CRF). The CRF is a jail facility connected to the superior court building in Bakersfield.

Having been sentenced that morning, defendant was scheduled to be transported to another jail en route to Wasco State Prison. Upon returning to the CRF, defendant asked a sheriff's deputy to loosen his leg restraints. The deputy examined the restraints and agreed the shackle around defendant's right ankle was too tight. The deputy later testified, "I took off one of the shackles and replaced it with a large zip tie, a thick zip tie, and then applied the ankle restrain[t] to that. So the zip tie was secured around his ankle and then the metal one was secured to that."

Following the adjustment to his restraints, defendant lined up with a group of inmates waiting to board a 40-foot bus parked in an enclosed area of the CRF known as the "bus barn." A closed "roll-up garage door" separated the interior of the bus barn from an outside parking lot, which was a public area. Two deputies from the Transportation Department of the Kern County Sheriff's Office, including Deputy Martin Rodriguez, oversaw the boarding process.

Once all inmates were thought to be on board, the garage door was opened and the bus backed out into the parking lot. Deputy Rodriguez soon noticed a pair of jail-issued pants on the floor of the garage. Puzzled, the deputy told his partner to "just pull the bus forward about five feet and just wait and see what happens." Shortly thereafter, a

2.

disheveled looking man (defendant) appeared behind the vehicle and began walking toward Truxtun Avenue.

Deputy Rodriguez initially thought defendant was a homeless person because he was "so dirty" and covered in what was later determined to be motor oil. Another reason was defendant's gait. The deputy knew that standard leg restraints force inmates to "shuffle" along in "little short[] step[s]," but defendant was "walking normal." Defendant also swung his left arm as he walked, which a properly restrained inmate could not do because of the handcuffs. Despite those circumstances, the deputy felt "something didn't add up" and thus followed defendant as he moved toward the intersection of Truxtun and L Street.

Defendant stopped to talk to a pedestrian, which allowed Deputy Rodriguez to catch up to him and see a pair of handcuffs attached to his right wrist. Deputy Rodriguez tackled defendant to the ground, at which point a struggle allegedly ensued. After approximately 30 or 40 seconds, defendant gave up and allowed himself to be escorted back to the CRF.

The incident prompted a search of the bus barn. In addition to the discarded jail pants, deputies found a razor blade and a severed zip tie. A review of video footage captured by a surveillance camera showed defendant sneaking away from the line of inmates and crawling under the back of the bus.

Later in the day, defendant waived his right to remain silent and gave a recorded confession. Defendant admitted possessing the razor blade but denied using it during the incident. He claimed to have used a "sharp hinge" on the underside of the bus to cut through the zip tie around his leg. Defendant further explained how, with great effort, he had squeezed his left hand out of the handcuffs. He then removed his brown inmate pants, which left him wearing a white shirt and "an extra pair of [blue] pants." Those acts occurred prior to the bus pulling out of the bus barn.

Defendant was charged with two felony counts, both pleaded with alternative theories. Count 1 alleged escape or attempted escape from a prison by use of force or violence. (Pen. Code, § 4530, subd. (a); all undesignated statutory references are to this code.) Count 2 alleged escape or attempted escape from a jail by use of force or violence. (§ 4532, subd. (b)(2).) Defendant was further alleged to have suffered multiple prior strike convictions as defined by the three strikes law. (§§ 667, subds. (b)–(j), 1170.12, subds. (a)–(e).)

At trial, the People's case-in-chief established the facts summarized above. The jury saw video recordings of the incident from two different angles, and it heard an audio recording of defendant's confession. The defense rested without presenting any evidence.

After the close of evidence, the People moved to dismiss count 1. The motion was granted. The People then elected to base count 2 on a theory of attempted escape. The jury returned a guilty verdict, and defendant subsequently admitted the prior strike allegations.

The defense unsuccessfully moved for a new trial on grounds of insufficient evidence and instructional error. The trial court sentenced defendant to the upper term of six years in prison, which was doubled to 12 years because of a prior strike. As required by statute, the term was ordered to be served consecutively to the sentence imposed in case No. BF159035A. (§ 4532, subd. (b)(2).)

## DISCUSSION

### I. Alleged Instructional Error

#### A. Additional Background

Most criminal attempts are governed by the general attempt statutes, i.e., sections 21a and 664. (*People v. Medina* (2007) 41 Cal.4th 685, 696–697.) The crime of attempted escape is an exception. Section 4532 prohibits an attempted or completed

4.

escape from a jail and imposes the same punishment for both crimes.  (*Id*., subds. (b)(1), (2).)  A heightened penalty is imposed if either offense is committed "by force or violence."  (*Id.*, subd. (b)(2).)

The phrase "force or violence" has been judicially interpreted to mean "'any wrongful application of physical force *against property* or the person of another.'"  (*People v. Bravott* (1986) 183 Cal.App.3d 93, 97.)  In *People v. White* (1988) 202 Cal.App.3d 862, a finding of force against property was upheld based on the inmate's use of a mop handle to make a hole in the ceiling above his cell.  (*Id*. at pp. 864, 867.)  More recently, in *People v. Kunes* (2014) 231 Cal.App.4th 1438 (*Kunes*), an inmate who had been released on home detention was held to have violated section 4532, subdivision (b)(2), by using a pair of scissors to remove a jail-issued GPS monitoring device from around his ankle.  (*Kunes*, at p. 1444.)  The *Kunes* opinion explains that only slight force is required.  (*Ibid*.; accord, *White*, *supra*, at pp. 866–867; *People v. Lozano* (1987) 192 Cal.App.3d 618, 627.)

"Although the term 'escape' is not statutorily defined, case law has defined 'escape' as the unauthorized or '"unlawful departure of a prisoner from the limits of his custody."'"  (*People v. Bailey* (2012) 54 Cal.4th 740, 748–749, quoting *People v. Quijada* (1921) 53 Cal.App. 39, 41.)  It is generally accepted that an escape has occurred, or at least is in progress, by the time the inmate breaches "the outer limits of the prison [or jail] property."  (*People v. Lavaie* (1999) 70 Cal.App.4th 456, 461; see *Bailey*, at p. 756 (conc. opn. of Werdegar, J.) [discussing "three older decisions" wherein "the evidence showed a completed escape even though the defendant had not reached the limits of the correctional facility's *property or grounds* when apprehended"].)  In *People v. Bigelow* (1984) 37 Cal.3d 731 (*Bigelow*), escape was construed as a continuing act for purposes of section 190.2, subdivision (a)(5), i.e., murder committed for the purpose of "perfecting or attempting to perfect, an escape from lawful custody."  The escape is "'perfected'" once the defendant "has departed the confines of the prison facility *and*

reached a place of temporary safety outside the confines of the prison." (*Bigelow*, at p. 754, italics added.)

In this case, defendant's trial counsel argued the attempt to escape was successful the moment defendant exited the bus barn and reached the outside parking lot. Based on this theory of a "perfected" escape, counsel argued the alleged struggle with Deputy Rodriguez on Truxtun Avenue constituted resisting arrest but not escape by force or violence. Although *Bigelow* was not cited, the trial court rejected the defense argument and concluded escape is a continuing offense until the inmate reaches a place of temporary safety. In its discussion of the issue, the trial court reminded the prosecutor, "[T]he jury has got to agree unanimously which facts they are relying on."

The prosecutor later moved to dismiss count 1 and elected to argue a theory of *attempted* escape as the basis for liability under section 4532, subdivision (b)(2). This was described as "a tactical decision made by the People in light of some of the discussions … regarding issues with sending unanimity on a factual basis [*sic*] …." The court continued, "And, with that, I don't believe either side is requesting unanimity on that from the People's point of view or the defense." Defense counsel agreed, and the trial court did not provide a unanimity instruction to the jury.

Earlier in the trial, citing the "very unique" circumstance of the incident occurring "at the courthouse," the prosecutor had argued (to the trial court) that defendant's *attempt* to escape should be viewed as a continuing offense despite his movement beyond the physical confines of the jail. The prosecutor reasserted this position in closing argument to the jury. The argument focused on the element of force or violence: "The shackles were important because one of the issues as I think you'll see there's a lesser included without force.… [¶] [Y]ou don't have to agree [on when defendant used force] because this is one big story from 8:30 in the morning until close to noon when he's tackled by Deputy Rodriguez."

The prosecutor initially emphasized defendant's actions while inside of the bus barn. For example: "[H]e's fighting to get his pants off; fighting to slip shackles. There's force. He's fighting to get the plastic zip tie cut and he told you he cuts the zip tie. Whether it was with a razor blade or something sharp under the bus, it doesn't matter.… [¶] … You saw him crawl [under] the bus. Saw him cut the zip tie. And here's your attempt right here. This is where it starts. [¶] … Shimmying his pants or shimmying and slipping cuffs, cutting cuffs, these are all force."

As the argument progressed, the focus shifted to the incident on Truxtun Avenue: "You can find force or violence at any point from the beginning of the story to the end of the story but there is force and there is violence at the end of the story. After Deputy Martin Rodriguez tackles him, he explains to you that he's using body weight to buck him off. He's elbowing him. He's making physical contact with his body."

The prosecutor concluded by restating the dual theories of liability: "Force or violence is to wrongfully use physical force against property of a person. Now, remember, that's a K[ern County Sheriff's Office] zip tie. I understand it might just cost a penny but that's County property that he used force against to assist in his attempted escape. And he used violence against the person who attempted to stop him or did stop him."

In the defense closing argument, trial counsel argued the struggle with Deputy Rodriguez on Truxtun Avenue was irrelevant because "[i]f you're an inmate and you're outside the bus barn, you're an escapee." In other words, "You can't attempt to escape once you've escaped." Counsel also briefly argued any force defendant used against property before exiting the bus barn was insufficient. While this rationale would impliedly suggest defendant committed the lesser offense of attempted escape without force or violence (§ 4532, subd. (b)(1)), counsel essentially argued that a completed escape precludes liability for attempted escape. However, the jury was properly

7.

instructed that "defendant may be guilty of attempt even if you conclude that the escape was actually completed." (See further discussion, *post*.)

### B. Legal Analysis

Defendant's appellate counsel does not dispute the prosecution's theory of the attempted escape being a continuing offense even though defendant was apprehended on a public street. The opening brief assigns error to the lack of a unanimity instruction because of the People's reliance on multiple discrete acts to prove the element of force or violence. Since the issue has not been raised, we do not address the merits of the prosecution's continuing offense theory. However, we note that "[a] person charged with an attempted crime may be convicted of such even if the evidence at trial shows that the crime was completed." (*People v. Mejia* (2012) 211 Cal.App.4th 586, 605, citing § 663; accord, *People v. Robins* (2020) 44 Cal.App.5th 413, 420.) "Further, evidence tending to prove that the crime was completed, even though not absolute proof of the crime of attempt, gives rise to a reasonable inference that the perpetrator intended to commit that crime." (*People v. Rundle* (2008) 43 Cal.4th 76, 138, fn. 28, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) Therefore, the fact defendant may have succeeded in escaping from jail does not preclude the conviction of attempted escape. (§ 663.)

As for the issue presented, "'if one criminal act is charged, but the evidence tends to show the commission of more than one such act, "*either* the prosecution must elect the specific act relied upon to prove the charge to the jury, *or* the court must instruct the jury that it must unanimously agree that the defendant committed the same specific criminal act."'" (*People v. Brown* (2017) 11 Cal.App.5th 332, 341.) "On the other hand, where the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed …, the jury need not unanimously agree on the basis or, as the cases often put it, the 'theory' whereby the defendant is guilty." (*People*

8.

*v. Russo* (2001) 25 Cal.4th 1124, 1132.)  If the circumstances warrant a unanimity instruction, the trial court has a sua sponte duty to give one.  (*People v. Riel* (2000) 22 Cal.4th 1153, 1199.)

Simply stated, "[a] unanimity instruction is required if there is evidence that more than one crime occurred, each of which could provide the basis for conviction under a single count."  (*People v. Grimes* (2016) 1 Cal.5th 698, 727.)  We conclude that regardless of whether the evidence tended to show two distinct crimes, defendant's claim fails for lack of prejudice.  "There is a split of opinion in the appellate courts as to whether the *Chapman* standard or *Watson* standard for harmless error applies in a unanimity instruction case[,]" but here the alleged error is harmless under either standard. (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 576, referencing *Chapman v. California* (1967) 386 U.S. 18 and *People v. Watson* (1956) 46 Cal.2d 818.)

When a defendant relies on "the same defense to all criminal acts and 'the jury's verdict implies that it did not believe the only defense offered,' failure to give a unanimity instruction is harmless error."  (*People v. Hernandez*, *supra*, 217 Cal.App.4th at p. 577.)  Likewise, "[w]here the record indicates the jury resolved the basic credibility dispute against the defendant and therefore would have convicted him of any of the various offenses shown by the evidence, the failure to give the unanimity instruction is harmless."  (*People v. Thompson* (1995) 36 Cal.App.4th 843, 853.)  For example, in *People v. Parsons* (1984) 156 Cal.App.3d 1165 a unanimity error was deemed harmless because "appellant was unable to proffer any defense, but merely put the People to their proof."  (*Id*. at p. 1174.)

The evidence of defendant's attempted escape was uncontroverted.  As discussed, the jury saw a video of him ducking out of line, scurrying toward the rear wheels of the bus, and crawling underneath the vehicle.  Those actions, combined with the statements made in his recorded confession, eliminated any reasonable doubt as to defendant's intent to unlawfully depart from the physical limits of custody.  (See *People v. Bailey*, *supra*, 54

9.

Cal.4th at p. 749 ["Unlike escape, attempt to escape requires a specific intent to escape"].) Furthermore, as appellate counsel concedes "[t]here was evidence [defendant] attempted to escape by force or violence when he cut the zip tie that secured his legs."

The facts on the issue of force are analogous to those in *Kunes*, where the appellant used a pair of scissors to remove a GPS monitoring device from around his ankle. (*Kunes*, *supra*, 231 Cal.App.4th at p. 1444.) Defendant's admitted use of a "sharp hinge" to break the zip tie attached to his ankle established the requisite force against property. Defendant admitted he "cut it off underneath the bus," which must have occurred prior to him exiting the bus barn since the broken zip tie was found on the floor of the garage along with the discarded jail pants and razor. Therefore, even if defendant's trial counsel was correct about the escape being accomplished when the bus backed out of the enclosure, a properly instructed jury would have undoubtedly found defendant's conduct while inside the garage established the elements of attempted escape by force. (Cf. *People v. Wolfe* (2003) 114 Cal.App.4th 177, 188 [lack of unanimity instruction on gun possession charge held harmless given appellant's "damning admission" of owning firearms]; see generally *People v. Russo*, *supra*, 25 Cal.4th at p. 1132 [the "requirement of unanimity as to the criminal act 'is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed'"].)

## II.    *Pitchess* Review

As held in *Pitchess*, criminal defendants have a limited right to the discovery of peace officer personnel records to ensure "a fair trial and an intelligent defense in light of all relevant and reasonably accessible information." (*Pitchess*, *supra*, 11 Cal.3d at p. 535.) The process for obtaining such discovery is set forth in Penal Code sections 832.7 and 832.8, and Evidence Code sections 1043 through 1045. (*Chambers v. Superior Court* (2007) 42 Cal.4th 673, 679.) "The procedure requires a showing of good cause for

the discovery, an in camera review of the records if good cause is shown, and disclosure of information 'relevant to the subject matter involved in the pending litigation.'" (*People v. Thompson* (2006) 141 Cal.App.4th 1312, 1316, quoting Evid. Code, § 1045, subd. (a).)  A trial court's ruling on a *Pitchess* motion is reviewed for abuse of discretion. (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1039.)

Defendant filed a *Pitchess* motion concerning a sheriff's deputy involved in the underlying incident.  He sought to discover evidence of any prior "dishonest conduct." The trial court found good cause for an in camera review of the deputy's personnel records, and it ultimately ordered certain information disclosed to the defense.  Defendant now requests an independent review of the *Pitchess* proceedings to ensure no discoverable information was withheld.  Having reviewed a transcript of the confidential hearing, as well as the material produced by the custodian of records, we perceive no error in the trial court's ruling.  (See *People v. Mooc* (2001) 26 Cal.4th 1216, 1228–1232 [outlining the steps for evaluating a *Pitchess* motion in the trial court and on appeal].)

## III.    Motion for Substitute Counsel

Defendant is currently represented by appointed counsel.  He has filed a motion to "dismiss," i.e., discharge, his appointed counsel "and replace him with competent counsel."  Defendant complains of the attorney's failure to pursue what defendant believes are meritorious theories of reversible error.

"'The general rule that a defendant who is represented by an attorney of record will not be personally recognized by the court in the conduct of his case applies to the filing of *pro se* documents on appeal.'"  (*People v. Clark* (1992) 3 Cal.4th 41, 173.) However, an appellate court "will accept and consider pro se motions regarding representation, including requests for new counsel.  (Cf. *People v. Marsden* [(1970)] 2 Cal.3d 118.)"  (*Id.* at p. 173.)  In the analogous *Marsden* context, a defendant must be given the opportunity "'to explain the basis of his contention and to relate specific

instances of the attorney's inadequate performance.'" (*People v. Fierro* (1991) 1 Cal.4th 173, 204.) "'A defendant is entitled to relief if the record clearly shows that the first appointed attorney is not providing adequate representation [citation] or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citations].' [Citations.]" (*Ibid.*)

"Effective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed. [Citation.] Declining to raise a claim on appeal, therefore, is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court." (*Davila v. Davis* (2017) 582 U.S. ___, ___ [137 S.Ct. 2058, 2067].) With these principles in mind, we turn to defendant's legal arguments.

Defendant heavily relies on his trial counsel's theory of the case, i.e., that his attempt to escape was successful the moment he crossed the threshold of the garage and entered a public area. His theories of reversible error likewise concern the prosecution's reliance on the encounter with Deputy Rodriguez on Truxtun Avenue. For example, defendant faults his appellate counsel for not challenging the trial court's ruling on a motion in limine to exclude evidence of the alleged struggle "as irrelevant and contrary to Evidence Code [section] 352."

Like his trial attorney, defendant seems to believe a completed escape precludes liability for an attempted escape. His arguments suggest a lack of familiarity with section 663. The statute provides, in relevant part: "Any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was perpetrated by such person in pursuance of such attempt …." (§ 663.) As we have discussed, the statute "specifically permits a defendant to be convicted of the crime of attempt even if it is proved he succeeded." (*In re Sylvester C*. (2006) 137 Cal.App.4th 601, 610.) Put differently, "the state is not barred from imposing punishment for an

attempt merely because the crime has been completed." (*People v. Parrish* (1985) 170 Cal.App.3d 336, 342–343.)

Any claim based on the prosecution's reliance on the Truxtun Avenue incident would ultimately be subject to the harmless error analysis we have applied to the claim of instructional error. Therefore, such claims are not "plainly stronger than those actually presented" by defendant's appointed counsel. (*Davila v. Davis*, *supra*, 582 U.S. at p. __, [137 S.Ct. at p. 2067].) The same is true of defendant's suggested challenge to the sufficiency of evidence regarding the element of force.

Defendant argues "the removal of the zip tie did not and could not have assisted with the escape or an attempted escape" since he merely clung to the underside of the bus as it moved. Section 4532, subdivision (b)(2) is violated if an "escape or attempt to escape … is committed by force or violence." An attempted escape "requires a 'direct, unequivocal act to effect that purpose.'" (*People v. Lancaster* (2007) 41 Cal.4th 50, 94.) "The 'force' may be any wrongful use of force against property." (*Kunes*, *supra*, 231 Cal.App.4th at p. 1444.) Accordingly, the trial evidence permitted the conclusion defendant's attempted escape involved the use of force. (See *People v. White*, *supra*, 202 Cal.App.3d at p. 866 ["The Legislature may have … decided it was simply too difficult to distinguish between types of force an escaping felon might use against property. The Legislature's solution … was to create a relatively large, almost all-inclusive class, and to include those whose escapes are accomplished with a minimum amount of force against property"].)

Defendant also faults his appellate attorney for not claiming ineffective assistance of counsel based on his trial attorney's failure to object to alleged misstatements of law by the prosecutor during closing argument. Appellate counsel's decision not to present such a claim is understandable. First, "[i]t is rarely appropriate to resolve an ineffective assistance claim on direct appeal." (*People v. Duff* (2014) 58 Cal.4th 527, 550, fn. 9.)

Second, "the failure to object rarely establishes prejudice." (*People v. Freeman* (1994) 8 Cal.4th 450, 520; accord, *People v. Caro* (2019) 7 Cal.5th 463, 514.)

For the reasons discussed, the record does not "'clearly show[]'" that appellate counsel is "'not providing adequate representation … or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result.'" (*People v. Fierro*, *supra*, 1 Cal.4th at p. 204.) Defendant's motion is therefore denied.

## DISPOSITION

The judgment is affirmed.

PEÑA, Acting P. J.

WE CONCUR:


MEEHAN, J.


DE SANTOS, J.

14.